# O'Bannon *v.* Southern Express Company.

*Action on Penal Bond given by Agent to Express Company.*

*Common carrier; liability for loss of goods; what constitutes delivery.* — To render a common carrier liable for the loss of goods, there must have been an actual delivery of the goods to him, or a constructive delivery, with notice to him of an intention thereby to place them in his care and custody: merely placing them in such a position that he could easily have taken them, but without calling his attention to them, is not sufficient. The same rule equally applies as between the carrier and his agent, when he seeks to hold the agent liable for the loss of goods.

APPEAL from the Circuit Court of Escambia.

Tried before the Hon. P. O. HARPER.

This action was brought by the Southern Express Company against W. J. O'Bannon and others, and was founded on a penal bond executed by said O'Bannon as principal, and the other defendants as his sureties, which was in these words: " Whereas W. J. O'Bannon is to be hereafter employed by the Southern Express Company in the business of forwarding by different railroads, steamboats, and other modes of conveyance, packages of any and all kinds, and movable property, including

money and securities for money: Now, therefore, know all men by these presents, that I, the said W. J. O'Bannon, in consideration of said employment, and of the compensation which I am to receive from the said company for my services therein, do hereby covenant with the said company, and bind myself, my heirs, executors, and administrators, that I will, at all times, well and truly perform all the duties required of me in said employment, and well and truly account for all money, and property of every description, which may come into my possession or control by reason of said employment, and make good all loss and damage which may happen to such money or property while under my control, for which I may be legally responsible, and indemnify and save harmless the said company from all liability on account of my fault or neglect; and for the faithful performance of the above covenants, I, the said W. J. O'Bannon, as principal, and W. A. Riley and John M. Henderson as his sureties, do hereby, jointly and severally, bind ourselves, our heirs, executors, and administrators, to the Southern Express Company aforesaid, in the sum of one thousand dollars. In testimony whereof," &c. The complaint assigned as a breach of this bond, that the said O'Bannon had failed to deliver, or otherwise account for a money package, containing two hundred dollars, which was forwarded through the express company, by Geo. H. O'Neal, at Pensacola, Florida, consigned to J. C. Lovelace, at Brewton, Alabama, and which was alleged to have come into the defendant's hands by virtue of his said employment. The company had paid the money, on proof of its delivery to the agent at Pensacola, and its loss; and brought this action to recover it from the defendant O'Bannon, who was the agent of the company at Brewton. The cause was tried on "issue joined on the defendants' plea," but the record does not show what plea was filed.

The only question of fact in the case was, whether or not the money package was ever delivered to the defendant O'Bannon. The evidence on this point, as set out in the bill of exceptions, was as follows: "Mr. Janney, the express messenger, a witness for the plaintiff, testified as follows: On the night of the 16th September, 1870, about 9 o'clock, witness put the money package in his shipping-book, together with another package, a small box, with an express slip, and handed the said book, at Brewton, to J. L. Hoyt, for him to receipt for the packages then received at Brewton. The lids of the book folded or doubled over the packages in it, but did not cover them entirely. Witness did not place the money package in the hands of said Hoyt, nor call his attention to the fact that there was a money package in the shipping-book, and did not say anything to him

[O'Bannon *v.* Southern Express Company.]

about the said package. The package was in the book, and Hoyt receipted for it as a money package; signing the receipt, drawn in the book, for the package, a large box, and a small box, in these words, ' *W. J. O'Bannon, per Hoyt.*' Witness was standing in the express box, near the door, when he handed the book to said Hoyt, who was then standing on the ground near the door; and the train was not moving. Witness never saw the money package again. The schedule time, for the train to stop at that place, was one minute."

" J. L. Hoyt, a witness for the defendant, testified as follows: On the night of the 16th September, 1870, he received from Mr. Janney, the express messenger, at Brewton, a small box, but no money package. Some seconds after the train had stopped, witness went to the express car, to receipt for what the messenger had delivered and to receive and receipt for what he had to deliver at the door of the express box. The train was moving off when he reached the door of the express box; and whilst it was moving off, Mr. Janney handed or thrust the shipping-book, for him to sign a receipt which was in it, and which he signed, without reading or examining it. Witness saw and received a small box, and the express slip, and that was all he received from said Janney; he saw no money package, in the book, or elsewhere, and received none from said Janney; and no money package came into his hands or possession, from said Janney, or any one else. Janney said nothing to him about any money package, nor was his attention in any way called to a money package until the next morning, when he saw that the express slip called for a money package. The schedule time at that place was one minute, but witness did not believe it stopped a minute that night. The night was dark, and there were no lights, except the lamp usually carried by the express agent. Witness never saw the money package in controversy, and did not know what became of it."

" The court charged the jury, among other things, that, in order to charge the defendant, it was not necessary that there should have been an actual manucaption of the money package by his agent; that if, from the evidence, they believed that the messenger of the express company placed it in his control, or so placed it that he could easily have received it, it was sufficient." This charge, to which the defendants excepted, is now assigned as error.

S. J. Cumming, for appellants, cited Edwards on Bailments, 503, 573; Redfield on Carriers, §§ 58, 114.

Herbert & Murphey, with Thos. H. Watts, *contra.*

[Robertson *v.* Walker.]

BRICKELL, J. — The liability of a common carrier begins when goods are delivered to him, or to his proper servant or agent authorized to receive them, for transportation. Many questions have arisen, as to what will constitute a constructive delivery, fixing the liability of a carrier. In all cases, notice to the carrier, express or implied, of the intention to commit the goods to his care and custody, for transportation, has been deemed essential to impose upon him duty and liability. *Packard* v. *Getman*, 6 Cowen, 757.

The appellee is subjected to the duties and liabilities of a common carrier. The bond executed by the appellants, as to the breaches alleged in the pleadings, was intended to indemnify the appellee, against loss or damage by the negligence or delinquency of the agent, O'Bannon, so far as in the performance of his agency the duties and responsibilities of the appellee were involved. There could not have been a delivery of goods to O'Bannon, which would have imposed duty and responsibility on the appellee, unless knowledge of the intention to deliver could be traced to him or his assistants. So, his liability for goods or packages in the custody of other agents of the appellee, intended for delivery to him, would not begin, until there was an actual delivery, or a constructive delivery with notice to him of an intention to place the goods in his care and custody. Goods or packages may have been placed in a position in which he could have easily received them ; and yet, if he did not know it was intended he should receive them, diligence, or responsibility, could not be demanded of him. Duty and responsibility should not be imposed, without the knowledge of the party from whom they are to be exacted. The charge of the court, in its last sentence, authorized a verdict against the appellants, if the package was so placed that O'Bannon, or his agent, could easily have received it, although he was not informed, and had no knowledge of the purpose to deliver it into his care. In this sentence lies the error of the charge given.

The judgment is reversed, and the cause remanded.