### UNITED STATES *v.* McCREADY.

*(Circuit Court, W. D. Tennessee.* March 18, 1882.)

1. CRIMINAL LAW—OPENING LETTERS—CONSTITUTIONAL POWER OF CONGRESS.
   Where a letter carrier left a letter in the hall of the residence of the person to whom it was addressed, and the defendant opened it with intent to pry into the business and secrets of the owner of the letter, *held,* to be a violation of section 3892 of the Revised Statutes, and that the protection of a letter so situated is within the constitutional power of congress.

2. SAME—PROTECTION OF MAILED LETTERS.
   The act of congress was designed to protect letters sent by mail from embezzlement, and from interference with the improper designs therein enumerated, until they reached their destination by actual delivery to the person entitled to receive them.

Indictment.

The indictment in this case contains two counts. The first charges that defendant, at a certain time and place, unlawfully "did take a certain letter then addressed to one Lettie Amis, * * * and which had been in the United States post-office at said Memphis before the said letter had been delivered to the said Lettie Amis, to whom it was then and there addressed and directed, then and there with the design of her, the said Harriet McCready, to obstruct the correspondence of the said Lettie Amis, the said letter not then and there containing any article of value or evidence thereof."

The second count is like the first, except that it charges that the letter taken "had then and there been in the custody of one David Washington, * * * a letter carrier of the United States at said Memphis," and was unlawfully taken "then and there, with the design of her, the said Harriet McCready, to pry into the business and secrets of the said Lettie Amis."

This indictment is based on section 3892 of the United States Revised Statutes, which is as follows:

"Any person who shall take any letter, postal card, or packet, although it does not contain any article of value or evidence thereof, out of a post-office or branch post-office, or from a letter or mail carrier, or which has been in any post-office or branch post-office, or in the custody of any letter or mail carrier, before it has been delivered to the person to whom it was directed, with a design to obstruct the correspondence or to pry into the business or secrets of another, or shall secrete, embezzle, or destroy the same, shall, for every such offence, be punishable by a fine of not more than $500, or by imprisonment at hard labor for not more than one year, or both."

On the trial the jury returned the following special verdict:

"On or about May 14, 1881, David W. Washington, a United States letter carrier, threw into the hall of a building on Union street, [Memphis,] in which Lettie Amis and the defendant occupied rooms near each other, and both opening into the hall, a letter addressed to Lettie Amis, and sent by mail from Collierville. The defendant took this letter, carried it into an adjoining house and opened it, then, after having it read to her, sealed it up and afterwards gave it to Lettie Amis. Lettie Amis had previously instructed the letter carrier to leave her letters in that hall. The defendant took and opened the said letter with the intent to obstruct the correspondence and pry into the business and secrets of Lettie Amis. The letter did not contain any article of value or evidence thereof."

*W. W. Murray,* Dist. Atty., and *John B. Clough,* Asst. Atty., for the United States.

*John T. Moss,* for defendant.

HAMMOND, D. J. The question for the consideration of the court in this case is whether, under the facts found by the jury in their special verdict, the defendant is guilty, as charged in this indictment, or has violated the provisions of the statute under which it is drawn. The indictment charges the offence literally in the words of the statute, and the special verdict finds all the material allegations of both counts to be true.

But it is insisted for the defendant that these facts do not constitute a violation of the statute, because, as the letter was taken by the defendant after its delivery by the letter carrier at a place designated by Lettie Amis for the delivery of her mail, it had in law been "*delivered*" within the intent and meaning of the act; and that, if a proper construction of its language embraces an offence committed after the letter has passed from the actual control of the post-office officials and agents, and before manual delivery to the person to

whom it was directed, the enactment is to that extent beyond the legislative power of congress.

The clause of the statute material to be considered is the taking of "any letter   *   *   *   which *has been* in any post-office or branch post-office, or in the custody of any letter or mail carrier, before it has been delivered to the person to whom it was directed," with the unlawful design.   From the language used there can be no doubt that congress intended to protect letters sent by mail from embezzlement, and from interference, with the improper designs here enumerated, until they reached their destination by a proper delivery. The offence created is concerning a letter which "*has been*" in the mail, as well as the unlawful taking of a letter "out of a post-office," or "from a letter or mail carrier," evidencing an intention on the part of congress to protect postal correspondence from depredation as well after it has left the actual custody of the agents and officers of the post-office department as during the transit, or while in the post-office or in the hands of the letter carrier for delivery.   The offences denounced by the last clause of the statute are the secretion, embezzlement, or destruction of letters before they have reached the persons to whom directed; and, under the language used, none of these offences could be committed until after the letters had left the custody of the postal authorities and agents; and, according to the defendant's argument, they would not, therefore, be punishable. Persons employed in the postal service of the government are punished for these offences by the preceding section, and this section seems intended to apply to other than postal employes.

This act has been several times considered by the circuit courts, and a few of the cases will be examined.   In the case of *U. S.* v. *Parsons*, 2 Blatchf. 104, decided in 1849, a special verdict was found, under the literal facts of which the defendant was guilty of opening (then an offence under the act before revision) a letter with the design here charged.   Without discussing the authority of congress to pass the act, the court held it did not embrace the case made by the facts found, which were as follows: A letter carrier having a letter for delivery directed to Charles H. Parsons, gave it to A., in the defendant's house, in the absence of the defendant, who afterwards, at a different place, gave it to the defendant, who opened and embezzled the contents.   The defendant's name was the same as that on the direction of the letter.   The court says:

"We think that the object of this section does not look beyond a possession of letters obtained wrongfully from the post-office or from a letter carrier. Its design is to guard the post-office and its legitimate agents in the execution of their duties in the safe-keeping and delivery of letters. After the voluntary termination of the custody of a letter by the post-office or its agents, the property in and right of possession to it belong wholly to its real proprietor, and his rights are under the guardianship of the local law and not of that of the United States. All action and authority of the post-office department in respect to the letter terminated on its delivery to that third person, and in our opinion it was not intended that the act of congress should apply any longer than while the letter should be within the power and control of that department."

It seems to be conceded, however, by the learned judge that if the letter in this case had been wrongfully obtained from the letter carrier, the case would have been within the statute; yet the argument used in support of the doctrine that a letter is not protected after the termination of its custody by the post-office agents, would as well apply to a wrongful as to a rightful possession of it.

In the case of *U. S.* v. *Sander*, 6 McL. 598, (A. D. 1855,) the indictment contained two counts,—one charging the defendant with opening a letter with the prohibited designs; the other, with secreting and embezzling it. The defence was that defendant was the authorized agent of Phœbe Sturdivant, to whom the letter was directed, and that a delivery to him was in law such a delivery to her that the functions of the government over the letter thereupon terminated. The court so held, saying:

"A letter having been committed to the post-office department for carriage and delivery, if once parted with by the postmaster to a person authorized to receive it, from that moment ceases alike to be under the control of the department, and the power and authority of the general government. * * * When the functions of the department are exhausted by the proper delivery of mail matter, (once placed in its charge,) such mail matter is then beyond the reach and authority of any legislation of congress."

Yet, while the learned judge in charging the jury in that case instructed them to return a verdict of not guilty if they found the defendant was the authorized agent, as alleged, and received the letter from the post-office without any criminal purpose entertained at the time, he also charged that if, when he obtained it from the post-office, he had the criminal intent of opening with the design specified in the statute, the offence was complete, having had its inception in his taking the letter from the office with the wrongful intent. It is difficult to see how, under the above-quoted construction of the act, the ques-

tion of "design" or "intent" could enter into the consideration of the question if the defendant was the authorized agent to receive the letter, or how the opening or embezzlement of the letter after it is taken by rightful authority from the post-office, but with an intent to violate the seal for the forbidden or wrongful purpose, would be within the statute or within the scope of the legislative power of congress, while one so taken with a proper intention would not be longer within that protection. In either case the criminal act is not done until after the letter has left the custody of the officials by a rightful delivery, and the protection of the statute is extended to it after delivery to the agent of the addressee.

The case of *U. S.* v. *Mulvaney*, 4 Parker, C. C. 164, decided in 1855, involved a construction of the statute under consideration. There the mail carrier left with the defendant, (John Mulvaney,) at his place of business, (82 Catharine street,) a letter directed to "John Stewart, care of John Mulvaney, 82 Catharine street, New York City." Defendant at first objected to receive the letter, but did, and said he would see it was duly delivered to the person to whom it was directed. The letter was never delivered to Stewart, and on inquiry being made of the defendant he at first denied having received it, but afterwards confessed to having received, opened, read, and burned it. For the defence it was contended—*First*, that as the defendant had resorted to no fraud to obtain possession of the letter, on its receipt by him it had passed beyond the control of the government, and its jurisdiction to punish for the offence charged no longer existed; and, *second*, that there was no proof of the *corpus delicti* charged in the indictment, except the uncorroborated confession of the defendant, which was not sufficient to sustain a conviction; and the court sustained both defences. No opinion, however, was written in the case, the report merely showing the conclusion arrived at.

In the case of *U. S.* v. *Pond*, 2 Curt. 265, (A. D. 1855,) the indictment charged the defendant with opening (then an offence under the original act) a letter which had been in a post-office before it had been delivered to the person to whom it was directed, with the design obnoxious to the statute. A motion was made to quash the indictment on various grounds, and was overruled by Judge Curtis, who uses the following language as to the grounds of the motion pertinent to this inquiry:

"The first objection is that the indictment does not allege that the defendant unlawfully opened the letter in question. But, following the words of the act, it does allege such facts as, if true, amount to an unlawful opening;

for it avers the letter was opened before it reached the person to whom it was addressed with intent to obstruct the correspondence and pry into the business or secrets of another. This intent renders the opening of such a letter unlawful, and it would add nothing material to call it so. * * * It is further objected that it is not alleged that, at the time of the opening, the letter was in the custody of any postmaster, letter carrier, or other person having lawful charge of the letter. The words of the act do not require that the letter, when opened, should be in the lawful custody of any one, but only that it had been in the post-office, or in the custody of a mail carrier, and was opened before delivery to the person to whom directed. And I do not perceive sufficient reason why the language should not be literally construed. If a letter should be obtained by fraud or theft from a post-office by one person, and be opened by a second with design to pry into the business or secrets of another, or obstruct his correspondence, I think it would be an offence within this act. And so in any other case which has occurred to me, of a lawful or unlawful custody at the time of the opening with such intent."

In the case of *U. S.* v. *Driscoll,* 1 Low. 303, (A. D. 1869,) one of the indictments considered in the opinion was for opening a letter which had been in a post-office before it had been delivered to the person to whom it was directed, with the design alleged in the indictment in the case at bar. The defendant was an errand boy, whose duty required him to take from the post-office all letters arriving by mail to the address of his employers, and he was convicted of embezzling and opening his employer's letters so received by him, and the sole question discussed in the opinion is whether the agent or servant of a person to whom a letter is addressed is within the meaning of the law. The indictments were there drawn under twenty-second section of the act of March 3, 1825, from the last sentence or clause of which section 3892 of the Revised Statutes is carved. The court says: "Some of the language is broad enough to include within its literal meaning every letter that has ever been in a post-office, and every person that can deal with such a letter before it reaches the manual possession of its owner;" and after discussing the question as arising under another section of the statute, in which the court holds that the taking must be unlawful, and that the taking by an agent was lawful, the court further says as to the provision now under consideration:

"But I think the delivery means in this, as in the other clause, delivery to the person, or to his authorized agent. When such a delivery has been made, the government is discharged of further responsibility, and its functions cease to operate upon the letter. If the clerk or servant of the owner betrays his trust, that is a matter to be looked into by the authority of the state, whose laws regulate such agencies. * * * I have considered this

question once before. A letter had been left at a shop where the letters of a person to whom the particular letter was addressed were, with his knowledge and consent, usually left. A stranger, the defendant, intermeddled with such a letter after such delivery, and was indicted under the latter clause above cited; and the case being, by consent, submitted to me in a somewhat informal way, I ruled upon it, and the result was a *nol. pros.*"

The case of *U. S.* v. *Nutt*, 23 Int. Rev. Rec. 386, reported since the revision of the federal statutes, was considered by the district court for the northern district of Ohio in 1877. The indictment was substantially the same as the one we are considering, except that the taking of the letter was from a post-office. A letter signed "Nutt Brothers" had been written by John M. Nutt to Baughman, at Quincy, and was mailed at Sidney. The next day John M. gave the defendant, William A. Nutt, a written order, signed "Nutt Brothers," to the postmaster at Quincy, and the defendant on the order received the letter from the postmaster and opened it. The defences were numerous and some of them very ingenious. In charging the jury the court said:

"But it is claimed by the defendant that if the letter was obtained from the post-office with the assent and consent of the postmaster it was not a taking under the provisions of the statute making it an offence. I direct you on that subject that the taking of a letter out of a post-office in which it was regularly received by a person other than the person to whom it was addressed, and without his consent or direction, but with the consent of the postmaster, who voluntarily delivered it to him to be delivered to the proper person, with the design, at the time, to obstruct the correspondence or pry into the business or secrets of the person to whom to it is addressed, is a violation of the statute. * * * It is not necessary to show that the letter was unlawfully or clandestinely taken from the office by the defendant to make the taking, with the design specified, a violation of the statute. * * * It is claimed that the defendant had a right under that order to get possession of the letter. I direct you on that subject that where a letter is placed in the hands of the officer charged with the duty of mailing, and has been mailed and passed the mailing office into the custody of the post-office department for delivery, the writer loses control of it, and the alleged writer has no right to take it out of such custody and prevent or delay such delivery." See, also, *U. S.* v. *Eddy,* 1 Biss. 227, and *U. S.* v. *Tanner,* 6 McLean, 128

Another case, that of *U. S.* v. *Thoma,* 25 Int. Rev. Rec. 171, was decided in 1879 by the district court of New Jersey. The facts found by the special verdict were briefly that about December 7, 1877, a registered letter was sent from Switzerland to "Jacob Schoch, care of Charles Thoma, Long Branch, N. J.," containing a bill of exchange in favor of Schoch, who died at Long Branch in October preceding,

of which place he had for several years been a resident.' Thoma, the defendant, received the letter from the post-office and receipted for it, and under advice brought it again to the postmaster, who opened the letter and returned it to the defendant. Schoch, before his death, was expecting this letter, and had told defendant "he would have the first claim on it," the former being indebted to the defendant at the time. Schoch's widow, who lived apart from him in New York city, and had obtained letters of administration on his estate there, had demanded the letter and bill of exchange of the defendant, who refused to deliver it until his debt was paid or secured. The court, in considering these facts, says:

" The act of the defendant, as thus explained, brings him, I am inclined to believe, within the letter of the law but not within its spirit. Penal statutes should be construed strictly, and the retention of a letter by a person who came *lawfully* into its possession is not the misdemeanor that congress had in view. * * * But the delivery of the letter to the defendant terminated the action and authority of the post-office department over the subject-matter. It was directed to the defendant's care. He was designated as the person to receive it from the post-office. So far as the department was concerned its responsibility ended with the delivery to him. * * * It was suggested on the argument that Judge Cadwallader gave a different view of the section, holding in a recent case that a defendant was liable to its penalties who opened a letter addressed to his care, to a female servant of his family—the letter having been delivered to him by the officials of the post-office. The case is not reported, and there may have been circumstances connected with it that justified such a construction, and which do not appear here."

See, also, *U. S.* v. *Mulvaney, supra,* where the letter was taken by the defendant in whose care it was directed.

Under this section of the Revised Statutes it may be that delivery of a letter to a person in whose care it is addressed is such a delivery as that the person receiving it is not guilty of the unlawful *taking* denounced by this law. Indeed, the regulations of the postmaster general (made by legal authority) in such cases require the delivery to the person addressed, rather than to the person in whose care addressed, only when so requested by the former. Postal Laws and Regulations, § 280, (Ed. 1879.)

I have examined with considerable care the cases on this subject arising under the English postal laws. The question there almost always turns on the definition of a "post-letter," and nearly all the cases discuss it with reference to the time or circumstances under which a letter becomes a post-letter, or whether it has ever been such, rather than when its character as such ceases, because the English

statute points out with so much particularity what shall constitute a delivery, or rather when a letter shall cease to be a post-letter; its character as such continuing "to the time of its being delivered to the person to whom it is addressed, or to his house or office, or to his servant or agent, or other person considered to be authorized to receive the letter according to the usual manner of delivering that person's letters." 1 Vict. *c.* 36, § 47. A few of the English and some other cases examined are collected in a note to this opinion.

The argument made for the defendant in this case would incorporate into our statute all the provisions and limitations of the English statute; and the court here is asked to rule on the question presented as though it now contained them. But I cannot accede to this doctrine. Congress has denounced in unambiguous terms the intermeddling with correspondence transmitted by mail "before it has been delivered to the person to whom it was directed;" and while the delivery to an authorized agent of the addressee may possibly be a good delivery within the meaning of the statute, I am not prepared to hold that the placing of a letter in a private letter-box, or leaving it in an office or hall, by the letter carrier, in the absence of the person to whom it is addressed, even with his sanction, exposes it to the depredations of strangers beyond the purview of this section or the power of congress to create and punish the offence. Public policy requires a different construction of this statute; and the laws creating and governing our entire postal system, now grown to such huge dimensions, have, by their various provisions and the regulations made in pursuance thereof, undertaken, since the establishment of the government, to protect correspondence from all manner of depredation and unlawful interference from the time of mailing till it reaches the hands of those entitled to break the seal. For example, section 3928 provides that a receipt shall be taken upon the delivery of any registered mail matter and returned to the sender; section 3936 prescribes how undelivered letters shall be returned to the writers; and sections 3938 and 3939 provide for a like return of request letters and valuable dead letters. Mail matter directed to and left at hotels "must be returned to the post-office as soon as it is evident that it will not be claimed." "Officers of clubs and boards of trade or exchange should not hold unclaimed letters longer than 10 days, except at the request of the person addressed." Post. Laws & Reg. p. 30. See, also, Id. §§ 275–294, as to the delivery of letters addressed to a firm, letters coming from the pension office, those directed to officials, minors, deceased persons, assignees, defunct

corporations, fictitious persons, and those sent to a place at which there is no post-office. See, also, "Delivery of Letters," 13 Op. of Atty. Gen. 395, 406, 481. In this last opinion letters arrived at a post-office, directed to a young lady over 18, but under 21, years of age, which were claimed both by herself and her guardian, and the attorney general held she was entitled to them, citing the section now under consideration. See, also, official opinions of assistant attorneys general of post-office department, (Post. Laws & Reg. 328, 331, 333, 337, 344,) and opinion No. 67, referred to on page 347 in manuscript which I have obtained from the department, it being the departmental construction of section 3892. The opinion uses this language:

"It was evidently the intention by the section (and it should be so construed) to make the taking or receiving by any person of a letter of the description set out in the section, 'with a design to obstruct the correspondence or pry into the business or secrets of another,' an offence complete in itself."

The word "deliver" has perhaps as many different shades of meaning ascertained by judicial interpretation as any other term known to the law. I have examined a large number of cases in which it has been defined, including those involving the delivery of deeds, the delivery of goods under a contract, the delivery by and to common carriers and vessels, and the delivery of notices, telegrams, and the like. A few of the cases will be briefly noticed. *Ostrander* v. *Brown*, 15 Johns. 39, and *Price* v. *Powell*, 3 N. Y. 322, decide that, "as between carrier and consignee, delivery implies mutual acts of the two. Landing the property on the wharf at the end of the voyage is not a good delivery without, at the least, giving notice to the consignee." In the case of *O'Bannon* v. *Southern Express Co.* 51 Ala. 481, it was held that merely placing goods in such a position that the receiving clerk in a carrier's office might see them, but without calling his attention to them, is not a delivery. In *Cox* v. *Todd*, 7 Dowl. & R. 131; S. C. 16 C. L. 277, on a contract that barley should be delivered during April, the court uses this language: "If the word *'delivered'* means no more than *brought*, then the plaintiff has performed the contract; but I think that is not the meaning." The case of *Hill* v. *Humphreys*, 2 Bos. & Pull. 343, was an action for the recovery of attorneys' fees. By the English statute, before such an action could be maintained, a bill of the fees 30 days before suit was required to be "delivered to the party to be charged therewith, or left for him at his dwelling-house or last place of abode." The bill was left at defendant's counting-house, and

Lord Eldon directed a nonsuit. In *Vincent* v. *Slaymaker*, 12 East, 372, an action of the same character, the delivery was to an attorney of the defendant, and it was held a good delivery to the defendant by a divided court, Lord Ellenborough dissenting. Later, in 1849, and after this statute had been amended by allowing a delivery at the place of business or by post, the case of *McGregor* v. *Keiley*, 3 Exch. R. 794, an action for such a bill of fees was decided. The plea alleged that no bill had been *delivered to defendant* or sent by post to or left for him at his place of business or dwelling-house; replication that *plaintiff did deliver to defendant*. The proof was that witness went to defendant's house and delivered the bill to a servant at the door. It was objected that this was *no proof* of *delivery to the defendant*. *Pollock*, C. B., overruled the objection, and the case was reserved for the consideration of the court whether there was *proof of personal delivery*, and the only question considered was whether there was *any evidence* from which a jury might infer that defendant received the bill, and it was resolved that there was. 1 Taylor, Ev. § 182; 2 Whart. Ev. § 1326, and cases cited.

In most of the cases decided on this statute adversely to the views we entertain, the courts base their decisions on the ground that after the letter carrier, or other postal agent, has parted with actual possession of a letter "all action and authority of the post-office department terminates as to it;" but *non constat* that it then, and before it actually reaches the person for whom it was intended, becomes a subject of public plunder, beyond the power of the government to punish for its embezzlement or destruction. Some of the cases, by their reasoning, intimate that the act is unconstitutional as being beyond the legitimate scope of legislative enactment delegated to congress. But the late case of *U. S.* v. *Hall*, 98 U. S. 343, decided in 1878, overrules all such objections. This was an indictment under section 4783, Rev. St., against a guardian for embezzling the pension money of his ward, in violation of his trust. The case came before the supreme court of the United States on a certificate of division in opinion between the judges of the circuit court, and involved substantially two questions: *First*, whether the offence is committed when the embezzlement charged did not take place until the pension money was paid over by the government to the defendant, as guardian of his ward; and, *second*, whether the act of congress defining the offence charged is a valid law, passed in pursuance of the constitution. Both these questions were decided in the affirmative by a unanimous court, Justice Clifford delivering the opinion, which is an

exhaustive review of the legislation of congress, and of the cases, both state and federal. The reasoning in that case, and its analogy to the one under consideration, are decisive of the questions here, and accord fully with my own judgment on the principles here involved. And, indeed, if a guardian, who is an officer of the state, under bond for the faithful discharge of his duties as such, is punishable for embezzling the pension money of his ward, after he had lawfully received it, and after its final and complete payment by the United States, *a fortiori,* one is punishable who wrongfully, without any authority of law, or pretence of authority, in fact, embezzles or unwarrantably interferes with mail correspondence which has parted from the actual possession of the postal authorities, but before its receipt by the person for whom it was intended, and to whom it was directed, and to whom the government undertook to convey and deliver it; provided, of course, the offence is created by statute in either case, as is the fact. Every objection made here, as well as many others, was urged in *U. S.* v. *Hall.* It was there insisted that the statute was municipal in its character, operating directly on the conduct of individuals; that if congress may pass such a law it may assume all the police regulations of the state; that as the state law authorized the guardian to receive the money, he cannot, under an act of congress, be punished for embezzlement after lawfully receiving it; and that when the payment is made to the guardian, the money ceased to be under the constitutional control of the United States. But the supreme court was "unhesitatingly of a different opinion," for reasons stated with remarkable force and clearness.

The wisdom of the policy which originated this and kindred statutes for the protection of the mails, and has kept them alive and operative, substantially in their present form, for 60 years, cannot but be apparent when we consider for a moment the object for which they were designed, and the multiplicity of varied interests, commercial, social, governmental, financial, and in short of every description, which are entrusted to the mail department of the public service. And it is of the utmost importance that the immense correspondence of the country should be most carefully and scrupulously guarded by wholesome laws made for its protection at all times and under all circumstances, from the time of mailing until it reaches those who are entitled to its secrets. The public have a right to repose just this kind and degree of confidence in the postal system of the government; and in my judgment congress, if it has not already done

so, can constitutionally enact laws for the protection of the mails to such an extent.

The system of mail delivery in cities by letter carriers is of comparatively modern date, and is constantly increasing with the growth and development of the country. It necessarily affords greater and more abundant opportunity for the commission of offences like those charged in this case than the older method of delivery at the post-office. Letters are left in private boxes, on tables, counters, and under doors, and if the system is to be efficient they must be protected in that situation. Indeed, the postmasters general have for years, by their printed regulations, urged the public to "provide, in cities where letter carriers are employed, letter boxes at places of business or private residences, thereby saving much delay in the delivery of mail matter." For the above reason, it seems to me that section 3892 should receive a liberal construction by the courts. The evil to be remedied and guarded against is so easy of accomplishment it could not, under an opposite or different construction be prevented by the existing statute. It is ample in its letter and spirit, and was, no doubt, intended to protect the seals of all correspondence through the mails until actual manual delivery to the party addressed, or his authorized agent. The courts should, in my judgment, effectuate that intention by so construing it, and not devolve the duty of affording the required protection on the states upon any theory that there is a want of constitutional power in congress to do it. It seems an unnecessary separation of the subject-matter to so divide the duty of protection.

I am, therefore, of the opinion that the special verdict in this case renders the defendant guilty of the offence charged in the indictment.

NOTE. Consult *U. S.* v. *Nutt,* 1 McLean, 499; *U. S.* v. *Pearce,* 2 McLean, 14; *U. S.* v. *Martin,* Id. 256; *U. S.* v. *Lancaster,* Id. 431; *U. S.* v. *Fisher,* 5 McLean, 23; *U. S.* v. *Whitaker,* 6 McLean, 342; *U. S.* v. *Emerson,* 5 McLean, 406; *U. S.* v. *Patterson,* 6 McLean, 466; *U. S.* v. *Belew,* 2 Brock. 280; *U. S.* v. *Foye,* 1 Curtis, C. C. 364; *Dewee's Case,* Chase's Dec. 533; *U. S.* v. *Wilson,* 1 Baldw. C. C. 102; *U. S.* v. *Wood,* 3 Wash. C. C. 440; *U. S.* v. *Hart,* 1 Pet. C. C. 390; *U. S.* v. *Baugh,* 1 FED. REP. 784; *U. S.* v. *Hardyman,* 13 Pet. 176; *Rex* v. *Harley,* 1 Car. & Kir. 89; *Rex* v. *Gardner,* 1 Car. & Kir. (47 E. C. L.) 628; *Reg.* v. *Newey,* Id. 629, note *a;* *Reg.* v. *Jones,* 2 Car. & Kir. 236; *Reg.* v. *Looney,* Id. 466; *Reg.* v. *Bickerstaff,* Id. 761; *Reg.* v. *Wynn,* Id. 859; *Rex* v. *Pearson,* 4 C. & P. 472; *Reg.* v. *Mense,* 1 Car. & Marsh. 234. And as to construction of statutes, *Spofford* v. *Kirk,* 97 U. S. 484, 490; *U. S.* v. *Justices of Lauderdale County,* 10 FED. REP. 460. Compare, also, Rev. St. §§ 3890, 3891, 5467, 5469, 5470, 5471.