## Case No. 16,219.

UNITED STATES v. SANDER.

[6 McLean, 598.] [1]

Circuit Court, N. D. Ohio.   July Term, 1855.

INDICTMENT — OFFENSES AGAINST POSTAL LAWS — EMBEZZLING LETTER.

1. A count in an indictment, which alleged that the defendant, did secrete and embezzle a certain letter, is not defective.

[Cited in U. S. v. Atkinson, 34 Fed. 318.]
[Cited in Whelchell v. State, 23 Ind. 90.]

2. When a statute makes one or more distinct acts connected with the same transaction, indictable, they may be charged as one act.

3. Where a letter is delivered to an authorized agent, the letter cannot be charged with having been embezzled. Whether the alleged agency existed, the jury must determine from the evidence.

[Cited in U. S. v. Driscoll, Case No. 14,994; U. S. v. Thoma, Id. 16,471; U. S. v. McCready, 11 Fed. 228; Re Burkhardt, 33 Fed. 27; U. S. v. Safford, 66 Fed. 945, 946.]
[Cited in U. S. v. Smith, 11 Utah, 433, 40 Pac. 709.]

Mr. Morton, U. S. Dist. Atty.
Adams & Bliss, for defendant.

WILLSON, District Judge (charging jury). This is an issue, upon a plea of not guilty, to an indictment founded upon the last clause of the 22d section of the act entitled "An act to reduce into one the several acts establishing and regulating the post office department," of March 3, 1825 [4 Stat. 102]. By this clause of the statute it is provided, "that if any person shall take any letter or packet not containing any article of value or evidence thereof, out of a post office, or shall open any letter or packet which shall have been in a post office, or in custody of a mail carrier, before it shall be delivered to the person to whom it is directed, with design to obstruct the correspondence, to pry into another's business or secrets:—or shall secrete, embezzle or destroy any such mail letter, or packet, such offender, upon conviction," &c. The indictment contains two counts. The first charges that the defendant [John N. Sander], on the 5th day of May, 1855, at Vermilion, &c., did open a letter which had been put into the mail at Coldwater, in the state of Michigan, to be conveyed by post, and directed to Phœbe Sturdevant, Vermilion, Ohio, with a design to obstruct the correspondence, and to pry into another's secrets  The second count charges that the "defendant at Vermilion, in the district aforesaid, on the 5th day of May, 1855, did secrete and embezzle a certain letter which had before been in the post office at Vermilion, in said district, before it had been delivered to the person to whom it was addressed and directed, and which letter was then and there directed to Phœbe Sturdevant, at said Vermilion, and which said letter had, before that time, been put into the mail of the

[1] [Reported by Hon. John McLean, Circuit Justice.]

United States at Coldwater, in the state of Michigan, and was intended to be conveyed by post to Vermilion aforesaid, and which said letter had before that been conveyed by mail, and was deposited in said post office, at Vermilion, and had not, before the same was so secreted and embezzled by said defendant, been delivered to said Phœbe Sturdevant."

At the commencement of the trial of the cause, the defendant's counsel made a motion to quash the second count of the indictment, for duplicity. The court overruled the motion, with an intimation to counsel, however, that if the court, on reflection, should deem the ruling wrong, they would direct the jury to exclude the testimony, as impertinent to the second count of the indictment.

We are satisfied that the second count is not defective for duplicity. When a statute makes two or more distinct acts, connected with the same transaction, indictable, each one of which may be considered as representing a stage in the same offence, it has been repeatedly held that they may be coupled in one count. Thus, setting up a gaming table, and inducing others to bet upon it, may constitute distinct offences: for either, unconnected with the other, an indictment will lie. Yet, when both are perpetrated by the same person, at the same time, they constitute but one offence, for which one count is sufficient, and for which but one penalty can be inflicted. In describing an offence under this statute, no technical words are necessary. In the case of U. S. v. Mills, 7 Pet. [32 U. S.] 142, the court say—"The general rule is, that in indictments for misdemeanors created by statute, it is sufficient to charge the offence in the words of the statute. There is not that technical nicety required as to form, which seems to have been adopted and sanctioned by long practice in cases of felony." In the Case of Mills the indictment was substantially, in form, like the second count of this; both charge the secreting and embezzling in one count, and both are founded on the same section of the post office law. The same ruling has been adopted by this court in the case of U. S. v. Lancaster [Case No. 15,556].

But a more serious and grave question is raised by defendant's counsel in requesting the court to charge the jury, "that if they should find the letter in question had been delivered by the post master at Vermilion to the defendant, who was at the time a fully authorized agent of Phœbe Sturdevant, to receive it, that any embezzlement by him thereafter, and before delivery to her, does not constitute an offence under the statute. It is claimed by counsel that a delivery to an authorized agent is a delivery to the principal, and that when this is done the functions of the post office department, and the powers of the federal government, are at an end in the premises.

We believe this position of counsel to be well taken. It is a familiar principle of law,

that an act done by an authorized agent, within the scope of his authority, is an act of the principal: "Qui facit per alium facit per se." Hence it is that the delivery of goods by a third person to an agent, and his acceptance of them for his principal, is, in contemplation of law, a delivery to, and acceptance, by the principal. So, payments made by a third person to the agent in the course of his employment, is payment to the principal, and whether actually paid to the principal or not, by the agent, it is conclusive on him. A letter, packet, or other thing valuable, having been committed to the post office department for carriage and delivery, if once parted with by the post master to a person authorized to receive it, from that moment ceases alike to be under the control of the department and the power and authority of the general government. The sanction, by the federal courts, of the contrary doctrine, would be dangerous in its tendency and subversive of reserved state authority. No power is given to congress to legislate upon the subject, except what is incident to, and necessary to carry out, the grant contained in the 8th section of the first article of the constitution. The grant is simply, "that congress shall have power to establish post offices and post roads," and while we would not adopt the limited and narrow construction given to this grant by President Monroe, in his special message to congress of 4th May, 1822, yet we would not extend implied powers further than what is necessary to carry out, with safety to the public, the legitimate operations of the post office establishment. When the functions of the department are exhausted by the proper delivery of mail matter (once placed in its charge) such mail matter is then beyond the reach and authority of any legislation of congress. It is for the jury to determine from the testimony, whether the defendant was the authorized agent of Phœbe Sturdevant to take this letter from the post office at Vermilion. If he so received it, without any criminal purpose at the time, you will have done with the case by returning a verdict of not guilty. But on the contrary, if you are satisfied from the testimony, beyond a reasonable doubt, that the defendant at the time he obtained the letter from the post office, did it with the criminal intent of opening it for the purpose of prying into another's business or secrets, then, although he may have had the previous consent of Phœbe Sturdevant to bring her letters from the post office, you will be required, nevertheless, to examine the evidence as to the offence charged in the first count of the indictment; for in that case the offence had its inception at the time of his taking the letter from the office, as that act was. in itself, a larceny.

We do not intend to recapitulate the testimony or comment upon it. We will say, however, that there is in this country a growing unwillingness to rest convictions on confessions alone. Yet it is hardly to be supposed that a man who is innocent, will make statements to different persons, and perform acts at different times, which, taken together, go directly to prove an alleged commission of a crime. When it is a question of intention of the accused, for an alleged violation of law, the jury in no case can have furnished them, by the prosecution, positive proof; when the intent is material, however, it must be shown by the government; and this is to be done by proving overt acts of the defendant from which the intention can be implied, as every man is supposed to intend the necessary consequences of his own acts.

Take the case, gentlemen, and under the rules of law, as given to you by the court, return a verdict according to the evidence.

The jury retired, and after several hours' deliberation came into court and asked to be discharged as there was no possibility of their agreeing upon a verdict. They were accordingly discharged by the court and the case continued.