## Case No. 14,994.

### UNITED STATES v. DRISCOLL.

[1 Lowell, 303.] [1]

District Court, D. Massachusetts. Feb., 1869.

EMBEZZLEMENT FROM MAIL — AUTHORITY TO RECEIVE—ERRAND-BOY—MASTER AND SERVANT.

1. An errand-boy who is authorized to call for and receive his employer's letters arriving by mail, and who, after receiving such a letter, containing an article of value, embezzles it, cannot be convicted under section 22 of the Act March 3, 1825 [4 Stat. 108], of taking from the mail and embezzling the letter, because his taking was lawful.

[Cited in U. S. v. Thoma, Case No. 16,471; U. S. v. McCready, 11 Fed. 230. Quoted in U. S. v. Safford, 66 Fed. 944.]

[Cited in State v. Concord R. R., 59 N. H. 86.]

2. Nor can he be convicted, under another clause of the same section, of opening a letter, not containing an article of value, before it shall have been delivered to the person to whom it was directed, if he took it in pursuance of his duty as errand-boy, because the delivery to him was a delivery to his employer within the meaning of that clause.

[Quoted in U. S. v. Safford, 66 Fed. 944.]

3. It is not the purpose of the post-office acts to regulate the conduct of masters and servants, but only to protect the mails.

[Cited in U. S. v. McCready, 11 Fed. 230; Re Burkhardt, 33 Fed. 27.]

[This was an indictment against John T. Driscoll for embezzling and destroying letters.]

M. F. Dickinson, Jr., Asst. U. S. Dist. Atty. J. E. Bates, for defendant.

LOWELL, District Judge. The defendant is an errand-boy employed by the firm of Hallet & Davis, of Boston, whose duty required him to take from the post-office all letters arriving by mail to the address of his employers. He has been convicted of having embezzled or destroyed two such letters so received by him, one containing, and one not containing, an article of value. The two indictments are framed under two clauses of section 22 of the act of 3d of March, 1825 (4 Stat. 108). By the

1 [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

first clause, it is made penal for any person to take the mail, or any letter or packet therefrom, or from any post-office, whether with or without the consent of the person having custody thereof, and to open, embezzle, or destroy any such mail, letter, or packet, the same containing any article of value; and by the second clause, the offence is committed if any person shall take any letter not containing an article of value out of any post-office, or shall open any letter which shall have been in any post-office, before it shall have been delivered to the person to whom it is directed, with design to obstruct the correspondence or pry into another's business or secrets. The question in this case is, whether the agent or servant of a person to whom a letter is addressed is within the meaning of the above clauses of the twenty-second section.

The scope and purpose of these clauses, and of the whole section, appear to be to protect the mails from every kind of danger while in the custody of the United States. Some of the language is broad enough to include within its literal meaning every letter that has ever been in a post-office, and every person that can deal with any such letter before it reaches the manual possession of its owner. Taken literally, the first clause is broad enough to cover even the person to whom the letter is addressed. But the law must have a reasonable construction, and one in accordance with the subject-matter, which is the due and proper custody and delivery of the mail. It must be taken to refer to letters with which the United States have concern under their power and duty to transport and deliver the correspondence of the country. It cannot be that the owner of a letter would be liable for such an act, and it is clear that the same rule applies to the agent. The first clause refers to an unlawful taking, whether with or without the connivance of an officer of the department, and without such a taking the offence is not complete. Here the taking was lawful.

The second clause of the section is not so clear. Under this clause the taking is not an essential element of the offence. The law reads "take or open," &c.; the language is disjunctive. But I think the delivery means in this, as in the other clause, delivery to the person or to his authorized agent. When such a delivery has been made, the government is discharged of further responsibility, and its functions cease to operate upon the letter. If the clerk or servant of the owner betrays his trust, that is a matter to be looked into by the authority of the state, whose laws regulate such agencies. If those laws make the act an embezzlement, there will be a remedy; if they do not, it would not be becoming in congress to do so if it could, which may be doubted. These letters had been delivered to the persons to whom they were directed, because they had been delivered to a servant duly authorized by them to receive their letters.

Two cases have been cited by the defend-

ant's counsel,—U. S. v. Parsons [Case No. 16,-000], and U. S. v. Sander [Id. 16,219],—in the latter of which it was held, that if a letter had been delivered to an authorized person, and the opening took place afterwards, this statute did not apply, because delivery to the agent or servant is delivery to the person to whom the letter is addressed; and in the former, the judgment was that the United States was discharged from further responsibility in the premises, after a bona fide delivery, though to the wrong person, himself innocent, when the offence was begun and consummated by a stranger, after the delivery had been perfected. The views of the judges in these cases were fortified by considerations derived from the natural functions, so to speak, of the federal government, it not being probable that the United States would attempt to regulate the relation of master and servant. I am informed upon good authority that Judge Sprague has made a similar decision. I have considered this question once before. A letter had been left at a shop where the letters of the person to whom the particular letter was addressed were, with his knowledge and consent, usually left. A stranger, the defendant, intermeddled with such a letter after such delivery, and was indicted under the latter clause above cited, and the case being, by consent, submitted to me in a somewhat informal way, I ruled upon it, and the result was a nol. pros.

The government has cited only one case,—U. S. v. Pond [Case No. 16,067],—but it is one of high authority, though, I suppose, not actually binding on this court, which has concurrent jurisdiction of all criminal cases, not capital. The point there came up on a motion to quash. Such a motion is always addressed to the discretion of the court, and I understand the decision to go only to this extent, that it is not necessary to allege in the indictment that the letter was in the custody of the United States at the time it was opened. This is undoubtedly so. The remarks of Mr. Justice Curtis go further, no doubt; still, I do not consider them to go to the length necessary to support this prosecution, because they do not refer to a delivery of the letter to one authorized to receive it. Judge Sprague's opinion was given after the decision of U. S. v. Pond [supra], had been made, and that case was called to his attention, and he must have considered, as I do, that it was not an authority to the point now in controversy.

One of the indictments here attempts to meet the difficulty by alleging that the defendant took the letter and unlawfully opened it, but the defect is not in the indictment, but in the law; which does not meet the case. The word "unlawfully" is not often of much value in an indictment; it only asserts a conclusion of law, which, if it arises out of the facts set forth, is unnecessary, and if it does not, is insufficient. The opening may have been unlawful, but it is not made so by any act of congress. New trial ordered.