## *In re* BURKHARDT.

(*District Court, E. D. Wisconsin.* October 27, 1887.)

1. CRIMINAL PRACTICE—REMOVAL FROM DISTRICT—REV. ST. § 1014.
   Where a removal is sought, under section 1014, Rev. St., of an accused person from the district where he is found to the district where the alleged offense was committed, there should be a preliminary examination to establish the identity of the prisoner, and his probable guilt, before a warrant for his removal is issued by the judge.

2. SAME.
   In such a case, the judge is not required to decide absolutely the question of guilt or innocence; nor is he authorized to discharge the accused if there be some doubt of guilt.

3. SAME.
   If identity is shown, and a case of probable guilt made, it is incumbent upon the judge to issue a warrant for the removal of the prisoner to the proper district, where a jury may determine, upon all the evidence, the question of guilt or innocence.

*(Syllabus by the Court.)*

In the Matter of the Application for the removal of Richard Burkhardt to the district of Minnesota on a criminal charge.

*W. A. Walker,* for the United States.

*W. C. Williams,* for accused.

DYER, J. On the fifteenth day of October the attorney for the United States presented to a commissioner in this district a complaint, in writing, charging that on the fifth day of March, 1887, Richard Burkhardt wrongfully and unlawfully took from the post-office at Wells, in the state of Minnesota, a certain letter directed to one August Biederman, which had been theretofore deposited in the post-office at Oshkosh, Wisconsin, addressed to said Biederman, and which contained a draft of the value of $100; and that the accused, having obtained possession of the letter, embezzled the same and its contents. A warrant was thereupon issued for the arrest of Burkhardt, and, being found in this district, he was arrested and brought before the commissioner to answer the charge against him. Before these proceedings were instituted, a warrant had been issued by a United States commissioner in the district of Minnesota for the arrest of the accused, but he was not found in that district. Upon being brought before the examining officer here, a preliminary examination was had, such as is usual in criminal cases; and, upon being satisfied of the identity of the prisoner, and of his having committed the offense charged, the commissioner held him to bail, and, in default of bail, the accused is in the custody of the marshal. Application is now made by the district attorney, under section 1014, Rev. St., for a warrant for the removal of the prisoner to Minnesota, where he may be tried for the offense with which he is charged.

The course of procedure pursued by the district attorney, preliminary to the present application, was correct. Section 1014 provides that "for any crime or offense against the United States, the offender may, by any

justice or judge of the United States, or by any commissioner of a circuit court to take bail,   *   *   *   at the expense of the United States, be arrested and imprisoned or bailed, as the case may be, for trial before such court of the United States as by law has cognizance of the offense.   *   *   *   And where any offender or witness is committed in any district other than that where the offense is to be tried, it shall be the duty of the judge of the district 'where such offender or witness is imprisoned, seasonably to issue, and of the marshal to execute, a warrant for his removal to the district where the trial is to be had."   It is true that this section contains no provision for a preliminary examination in such cases, but it does provide that the accused may be "arrested and imprisoned or bailed."   This is to be done agreeably to the usual mode of process against offenders in the state where he is found, as the section further expressly provides; and we know that, by the course of practice in this state, an offender is not imprisoned or held to bail without a previous examination into his probable guilt, unless he waives examination.   It is by this course of proceeding, also, that the identity of the prisoner is established; and it seems very clear that, in cases where the removal of the accused is sought from the district where he is found to the district in another state where the offense was committed, the act of congress was intended to require a preliminary examination by the committing magistrate, so that such magistrate, and the judge who may be applied to for a warrant of removal, shall be satisfied of the identity of the prisoner, and of his probable guilt.   Otherwise great injustice might be done to an accused person.   The language of section 1014 leaves no doubt that the preliminary inquiry should be had in the district where the offender is found.   This statement of the practice in such cases, is but a reiteration of the views expressed on the question by Mr. Justice MILLER and Judge LOVE, in 1 Woolw. C. C. 422–427.

The prisoner is charged with an offense under section 5469, Rev. St. Objection is made to his removal to Minnesota, on the ground that the evidence adduced before the commissioner does not show the commission of any offense punishable under the section referred to.   That section provides, among other things, that—

"Any person who shall steal the mail, or steal or take from or out of any mail or post-office, branch post-office, or other authorized depository for mail matter, any letter or packet; any person who shall take the mail, or any letter or packet therefrom, or from any post-office, branch post-office, or other authorized depository for mail matter,—with or without the consent of the person having custody thereof, and open, embezzle, or destroy any such mail, letter, or package which shall contain any note, bond, draft, check, etc., *   *   *   shall, although not employed in the postal service, be punishable," etc.

It appears, from the testimony in the case, that Biederman had a box in the Wells post-office, and one Banse was in the habit of receiving his mail through the same box, by arrangement with Biederman.   They were neighbors, living in the country, and the prisoner was at the time in the service of Banse, doing work on his farm.   The accused called at

the post-office, and, as he was authorized to do, received certain mail addressed to Banse. The postmaster asked him if Biederman sent for his mail also, and he said, "Yes;" whereupon he took from the office Biederman's mail, in which was the letter in question. The testimony shows that he subsequently opened the letter, and, finding it contained a draft, he indorsed the draft in such manner as enabled him to negotiate it, and, upon getting it cashed, appropriated the money.

The expression, "take the mail, or any letter or packet therefrom, or from any post-office * * * with or without the consent of the person having custody thereof," contained in the second clause of section 5469, means a wrongful, an unlawful, taking. If the accused had authority to take, and with such authority did take, Biederman's mail from the post-office, and, having thus obtained the letter in question, subsequently opened it, and embezzled its contents, such embezzlement was not an offense against the United States, though it would be against the state. To constitute the offense made punishable by the clause in section 5469 referred to, the taking of the mail or of a letter from the post-office must be with criminal intent; not a taking by the authority of the person to whom the letter is addressed, although there is a subsequent embezzlement, nor a taking by mistake, or with an innocent intent. *U. S. v. Pearce*, 2 McLean, 14. "A letter, packet, or other thing valuable, having been committed to the post-office department for carriage and delivery, if once parted with by the postmaster to a person authorized to receive it, from that moment ceases alike to be under the control of the department, and the power and authority of the general government. The sanction by the federal courts of the contrary doctrine would be dangerous in its tendency, and subversive of reserved state authority. * * * When the functions of the department are exhausted by the proper delivery of mail matter, (once placed in its charge,) such mail matter is then beyond the reach and authority of any legislation of congress." *U. S. v. Sander*, 6 McLean, 598. See, also, *U. S. v. Driscoll*, 1 Low. 303.

The material question, then, is, in the matter under consideration, does the testimony show that the prisoner, without authority, and therefore wrongfully, took the letter addressed to Biederman from the post-office? The postmaster testifies, as before stated, that he asked the accused, when he called for Banse's mail, if Biederman sent for his mail also, and the accused answered, "Yes;" and, as the two were getting their mail in the same box, he delivered the mail, which consisted of some newspapers and a letter, to the prisoner, supposing he had authority to receive it. Biederman and Banse had been accustomed, as neighboring farmers to get each other's mail when one went to town and the other did not. There is some testimony tending to show that there is a custom prevailing among farmers in the neighborhood for one going to the post-office for his own mail to get any mail that may be in the office for his neighbor; but the postmaster testified that he did not remember that he ever, before the occasion in question, delivered Biederman's mail to the accused. Biederman swears that the accused had no authority whatever from him to take his mail from the post-office, and that, al-

though the prisoner had been for a short time in his employment before he entered the service of Banse, he had never been authorized by him to receive his mail at the post-office, and never in fact got his mail while he was in his service. Biederman also testifies that, on the day the letter was taken from the post-office, he met the accused on the road returning home, and asked him if he had. his (Biederman's) mail. This is a circumstance which counsel for the accused claims points to the conclusion that Biederman expected the prisoner to bring his mail to him from the office; but Biederman says, further, that he did not expect the accused to bring him his mail, but that as he met him coming from town, and saw newspapers in his pocket which evidently came from the post-office, he asked him if he had any mail for him.

This is the substance of the testimony bearing on the vital point in the case. The accused was not sworn, and did not give his version of the transaction. It may be that the alleged want of authority is not conclusively shown; that is, beyond all doubt. But I do not understand that the judge, who is called on in such a case to determine whether he will order a removal of the accused to the district where the alleged offense was committed, is required to decide absolutely the question of his guilt or innocence, or is authorized to discharge him if there be some doubt of guilt; although, undoubtedly, in a case where it was clearly proven that the accused had not committed the offense charged, it would be the duty of the judge to order his discharge. If a case of probable guilt is made, then it is incumbent upon the judge to issue a warrant for the removal of the prisoner to the proper district, where a full investigation of all the facts and circumstances may be had, and where a jury may determine, upon all the evidence, the question of guilt or innocence. The identity of the prisoner, and his probable commission of an offense under section 5469, are here shown, and the case is therefore one in which a warrant of removal should issue.

*U. S.* v. *Parsons*, 2 Blatchf. 104, was cited by counsel for the accused as an authority in support of his view that no offense was committed within the meaning of section 5469. The facts in that case were that a letter mailed in Boston reached the post-office in New York. It was taken by a letter-carrier for delivery, and was given by him to a person in the house of the defendant; the defendant not being present, and not participating in the delivery. That person subsequently, and at a different place, delivered the letter to the defendant, who opened it, and embezzled the money inclosed. The letter was not intended for the defendant, but for another person bearing the same name; and it did not come into the possession of the defendant within the view of the letter-carrier, or with his knowledge, or while he remained at the place where he left the letter. Upon this state of facts, it was held that the defendant was not liable to prosecution for the embezzlement of the contents of the letter, under the post-office act of the United States, for the reason that there was no wrongful intent on the part of the person who received the letter from the carrier. He supposed the letter belonged to the defendant; and afterwards delivered it to him at a different place, as being

rightfully his. So far as both the letter-carrier and the person to whom the letter was delivered were concerned, the delivery of the letter was innocent and rightful, and therefore all action and authority of the post-office department in respect to the letter, terminated with its delivery to the third person. The inapplicability of this case in its facts to the case under consideration, is apparent.

A warrant will issue for the removal of the prisoner to the district of Minnesota.