**UNITED STATES of America,**
**Plaintiff,**

v.

**Shirley Ann MAXWELL, alias Shirley**
**Ann Bagby, Defendant.**

**No. 19346.**

United States District Court
W. D. Missouri, W. D.

Dec. 15, 1955.

Edward L. Scheufler, U. S. Atty., Paul R. Shy, Asst. U. S. Atty.; Kansas City, Mo., for plaintiff.

Rodger J. Walsh, Kansas City, Mo., for defendant.

RIDGE, District Judge.

Defendant first entered a plea of guilty to violation of Section 1702, Title 18 U.S.C.A. Thereafter, by leave of court, without objection on the part of the Government, defendant withdrew such plea and entered a plea of "not guilty." Leave of court was so granted because of an apparent conflict in the case law with respect to the proper construction to be given to Section 1702, Title 18 U.S.C.A., under which the Information herein is laid. The Information charges that defendant "did willfully, knowingly, unlawfully and feloniously take a letter * * which had been in a post office and an authorized depository for mail matter, before it had been delivered to the person to whom it was directed, with design to obstruct correspondence and to pry into the business and secrets of another, and did open, secrete and embezzle the contents of the same, to-wit, a State of Missouri check in the amount of $10.50," in violation of Section 1702, supra.

Defendant has filed written waiver of trial by jury and stipulated with the Government to a submission of such charge to the Court on the following agreed statement of facts: On or about April 12, 1955, defendant resided at 3239 East 32nd Street, Kansas City, Missouri, a residence which has been converted into three apartments. The mail for all tenants thereof was delivered to a common mail box located on the porch of the apartment building. On April 12, 1955, the Resident Manager, or a tenant, took United States mail from that box, which had been delivered and put therein by a "Mail Carrier" and placed it upon the table in the hall of the building. This mail included a letter addressed to one Sarah Dodd, 3239 East 32nd Street, Kansas City, Missouri, which contained a State of Missouri check in the amount of $10.50. Defendant, on this same date,

went to the table and took the letter addressed to Sarah Dodd, with intent to steal and embezzle the same and the contents thereof, and thereafter opened the letter, secreted the check, and later forged it. There was no certain person authorized to take mail from the mail box in question. Three families lived in the apartment building. Each of the families in the building helped themselves to the open mail box on the porch and it was the custom for the first person out to get their mail and place mail for other families on a little table in the hall.

Defendant has filed motion for a directed verdict of not guilty of the charge made against her under the facts so stipulated. The contention of the defendant in respect thereto, tersely stated, is this: When the third party, whether Manager or other tenant, residing at 3239 East 32nd Street, Kansas City, Missouri, removed the letter in question, along with other United States mail, from the mail box located on the porch of the apartment building and placed it on a table in the hallway thereof, they did so as the ostensible agent of the addressee of the letter; that the letter was thereby legally removed from the mail box; hence, jurisdiction of the Postal Authority thereover ceased and terminated; that the theft of the letter by this defendant after such removal from the mail box was not a violation of the above statute, because defendant took the letter from a place that was not an authorized depository for United States mail after it had been "delivered" to the addressee, within the meaning and intent of the above Act of Congress.

In support of her contention, defendant relies upon the following authorities: Huebner v. United States, 6 Cir., 28 F. 2d 929; United States v. Askey, D.C., 108 F.Supp. 408; United States v. Sehon Chinn, D.C., 85 F.Supp. 558; United States v. Bullington, C.C., 170 F. 121; United States v. Huilsman, D.C., 94 F. 486; United States v. Lee, C.C., 90 F. 256; United States v. Safford, D.C., 66 F. 942; United States v. Parsons, 1894, 27 Fed.Cas. page 451, No. 16,000, 2

Blatchf. 104; United States v. Sander, 27 Fed.Cas. page 949, No. 16,219, 6 McLean 598; United States v. Driscoll, 25 Fed.Cas. page 914, No. 14,994, 1 Low. 303. The Government insists that defendant is guilty of the charge made against her upon the facts stipulated; and, in support of its contention, cites Rosen v. United States, 245 U.S. 467, 38 S.Ct. 148, 62 L.Ed. 406; United States v. McCready, C.C., 11 F. 225, decided in 1882; and United States v. Hilbury, D. C., 29 F. 705.

None of the authorities supra relate to a construction of Section 1702, supra, as contained in the 1948 revision of the Criminal Code. Some of them were concerned with an Act of Congress, the near-counterpart of said section (cf. 22nd Section of the Act of Congress of March 3, 1825, c. 64, 2nd Session, 4 Stat. 109), but when reference is made thereto in such authorities it must be kept in mind that many revisions of the Criminal Code have been effected since those decisions were handed down; and, that subsequent regulations promulgated by the Postmaster General, by authority from the Congress, 5 U.S.C.A. § 22, now spell out that:

> "Private mail receptacles should be used to facilitate the delivery of mail. When designated by the owner or user thereof for the purpose of receiving mail, all rules and regulations affecting the use of such receptacles issued by the Postmaster General shall be effective and apply to such receptacles." Title 39, C.F. R., § 50.23.

And that the Postmaster General has declared that:

> "Every letter box or other receptacle intended or used for the receipt or delivery of mail matter on any city delivery route, * * * is hereby designated a letter box for the receipt or delivery of mail matter, and an authorized depository for mail matter within the meaning of 18 U.S.C. 1702, 1705 & 1708." Title 39, C.F.R., § 50.23(c).

Said regulations extending, as they do, protection to mail matter to an extent not present in the above authorities; and, the designation of "private mail receptacles" as authorized depositories for "letters" which were not promulgated by the Postmaster General at the time of rendition of any of the opinions supra, Cf. Huebner v. United States, 6 Cir., supra, 28 F.2d loc.cit. 930, we do not believe that protection of "mail" as considered in any of said authorities can be held to be *stare decisis* to a proper interpretation of the all-encompassing phrase, "before it has been delivered to the person to whom it was directed," as contained in Section 1702, supra. Such a determination is cardinal to the guilt or innocence of the defendant and the proper disposition of this cause. The question in this case is whether the Congress intended that a "letter" remains under the protection of the above statute until its manual delivery to the addressee, no matter what interval of time elapses, or circumstances occur between the mailing thereof and until it reaches the addressee.

 Several pregnant thoughts, which we think underlie and are essential to an understanding of the protection that the Congress has made regarding "letters" sent through the mails, must be kept in mind. The first and foremost is that from the power "To establish Post Offices and Post Roads" as given to the Congress by Article I, Section 8, Clause 7 of the Constitution of the United States, there is derived other incidental powers, one of them being the right to protect the mail by all appropriate legislation. Second, that the power of the Congress to protect the mail is exclusive and its regulation of the receipt, carriage and ultimate delivery of mail, "to the person to whom it [is] directed" is therefore supreme. Cf. Ex parte Jackson, 1878, 96 U.S. 727, 732, 24 L.Ed. 877; Searight v. Stokes, 1845, 3 How. 151, 169, 11 L.Ed. 537; In re Debs, 1895, 158 U.S. 564, 599, 15 S.Ct. 900, 39 L.Ed. 1092. Third, one may look in vain for any state

laws relating to the theft, opening, secreting, embezzling, or destroying of "letters" or "mail" as such. Therefore, it has been held that the postal powers of the Congress embrace all measures necessary to insure the safe and speedy transit and prompt delivery of the mails and mail matter; Ex parte Jackson, supra, and, not only are the mails under that exclusive protection of the Congress, but "mail" when it becomes such and so long as it remains mail, is in contemplation of law property of the National Government. Searight v. Stokes, supra; and In re Debs, supra.

■ As a consequence of the above, which now appears axiomatic in our case law, we say that whether the Congress has a constitutional right and power to enact legislation in the field covered by Section 1702, supra, is not before this Court, and that a proper interpretation of that Act of the Congress is not involved in any concept of constitutional limitations. Recognition of the existence of some constitutional limitation in Article I, Section 8, Clause 7, supra, coupled with an indication of vested authority inherent in the states, made by some of the courts in the above-cited decisions, and which apparently restrained them from giving a broad interpretation to the phrase, "before it has been delivered to the person to whom it was directed," does not concern us. One need not consider constitutional limitations in a field where the Congress has the conceded exclusive power to legislate, so long as such legislation does not violate our concept of "due process of law". No such proposition is here raised. Hence we are not here concerned with what Congress may do, or may not do, respecting "letters" and the mails, but only with what Congress has done by enactment of Section 1702, supra, which reads as follows:

"Whoever takes any letter, postal card, or package out of any post office or any authorized depository for mail matter, or from any letter or mail carrier, or which has been in any post office or authorized deposi-

tory, or in the custody of any letter or mail carrier, before it has been delivered to the person to whom it was directed, with design to obstruct the correspondence, or to pry into the business or secrets of another, or opens, secretes, embezzles, or destroys the same, shall be fined not more than $2,000 or imprisoned not more than five years, or both."

The nucleus of said section as incorporated into the 1948 Revision of the Criminal Code is the near-counterpart of the 22nd Section of the Act of Congress of March 3, 1825, c. 64, 2nd Session, 4 Stat. 109, which, since its first enactment, has substantially remained a part of the Criminal Code, denouncing offenses against the Postal Service. Its immediate predecessor was Section 317, Title 18 U.S.C.A. (Old). The all-encompassing provisions thereof were incorporated into the Criminal Code so as to punish the taking of anything from the mails by one not authorized so to do. See Historical Note to Section 317, Title 18 U.S.C.A. (Old). That being the purpose of the Congress in enactment of said section, then a proper interpretation of the extent of protection afforded "letters" intended thereby must be ascertained from a consideration of what was the legislative intent as expressed in the phrase, "delivered to the person to whom it was directed".

■ It is apparent from a reading of said section that the crime therein denounced can be committed in several different fashions. If a "letter, postal card, or package" is taken out of "any post office or station thereof, or out of any authorized depository for mail matter, or from any letter or mail carrier * * * with a design to obstruct * * * embezzle, or destroy" the same, such conduct for certain falls within the orbit of protection intended for the mail and covered thereby. The authorities cited by defendant recognize that proposition. That provision of the Act is not difficult to comprehend, for definitely a letter taken under such circumstances is then in the physical possession of the Post Office

Department of the Government. But in addition thereto the statute denounces as a crime the taking of any "letter", etc., with the same design and intent, "which has been in any post office or authorized depository, or in the custody of any letter or mail carrier, before it has been delivered to the person to whom it was directed". That is the portion of the statute under which the instant Information as filed against this defendant is laid. It is to be observed that the crime so defined is completed when the "letter", etc., is taken "with design to obstruct the correspondence, or to pry into the business or secrets of another, or [is] open[ed], secrete[d], embezzle[d], or destroy[ed]" by the person so taking it "before" it is "delivered to the person to whom it was directed". Hence, it is apparent from such provision of the Act, that the Congress intended to protect "letters", etc., not only while they are in the physical possession of the Post Office Department, but also thereafter. That the Congress may so legislate with respect to "delivery" of a "letter", we have no doubt, in view of its all-exclusive power over the mails. Without laboring the matter, we think a "letter" as commonly understood, and as used in the statute supra, is that which is sent and received through the Post Office Department, and that it remains such from the time it is deposited in a place designated by law, or rules of the Post Office Department, for receipt thereof, up to the time the same is "delivered" to the person to whom it is addressed, Cf. Wolpa v. United States, 8 Cir., 86 F.2d 35, 39, and that the Congress has covered a "letter" with the protection of Section 1702, supra, during that entire period of time.

But that does not resolve our instant problem. We must ascertain in what sense the Congress intended that the term "delivered" should be understood as used in said section. Without a proper determination of that matter, a "letter, postal card," etc., as such, may or may not be protected by law. For certain, if a "letter" as such is not protected by an Act of Congress it can find no protection elsewhere. 52 C.J.S., Larceny, § 3, p. 797. If it is determined that "delivery" of a letter is effected before it reaches the *manual* possession of the addressee, then there is no protection afforded a "letter" after it leaves an authorized depository for mail matter, or the hands of a mail carrier. That such a hiatus of protection for a "letter" was not within the intent and spirit of the Congress in enactment of the statute supra, we think obvious. The Court, in construing an Act of Congress, must yield to the legislative intent as therein expressed. It is manifest from the wording of Section 1702, supra, that Congress intended protection be afforded to "letters" after they leave the physical possession of employees of the Post Office Department.

Section 1702, supra, is but one of the many protective covers provided by the Congress for the safe delivery of a letter to the person to whom it is addressed. See Chapter 83, Title 18 U.S.C.A. Without delineating all such coverage, it is sufficient to say that specific crimes are denounced for the theft, embezzlement, secreting, destruction and diverting of letters and other mail matter while it is in the physical possession of the Post Office Department, as exemplified by Sections 1701 and 1703, by employees thereof; and generally by others as in Section 1708 of Title 18 U.S.C.A. It should be noted that in some of those sections the Congress has delineated various common law crimes as the means by which an offense against the Postal Laws may be so committed. This is important, especially when it is observed that the Congress has, in Section 1702, made the common law crime of embezzlement a method of violation thereof. Embezzlement as there used can only relate to an offense by one who has come into lawful possession of a letter, after it has been in an authorized depository for mail matter and is converted by the receiver to his own use, before it is delivered to the person to whom it is directed. If that is not the case, why did Congress include the common law crime of "embezzle-

ment" in said section? Having included that crime within the category delineated in said section, then it would appear that the protection afforded a "letter" is extended while it is in the actual or constructive possession of one not the addressee, and who may have innocently taken it from an authorized depository. We think this is made apparent by the provisions of said section which defines the crime as being complete if a letter is "take(n)" with a "design to obstruct * * * or opens, secretes, embezzles, or destroys" the same at that time. "Take" as used in said section, considered in conjunction with the "design" of the person doing the taking, denounced therein, is synonymous with the common law crime of larceny, and means to remove a letter, as one's own, with intent to convert it and deprive the addressee of possession thereof. It refers to "a clandestine taking—not a taking through mistake, or with an innocent intent. It must be a taking with a criminal intent." United States v. Pearce, 27 Fed.Cas. pages 480, 481, No. 16,020. Cf. United States v. Marselis, 26 Fed.Cas., page 1168, No. 15,-725; In re Burkhardt, D.C., 33 F. 25.

That such was the meaning and protection afforded a "letter", in enactment of Section 1702, supra, by the Congress, is made manifest by the Supreme Court in Rosen v. United States, supra, where it said [245 U.S. 467, 38 S.Ct. 151]:

"The suggestion that when the mail was deposited in a privately owned box it passed out of the custody of the government and beyond the protection of the law does not deserve extended notice. The letters which were stolen did not reach the *manual* possession of the persons to whom they were addressed, but were taken from an authorized depository over which the Act of Congress, by its express terms, extended its protection until its function had been served." (Emphasis added.)

In the Rosen case, supra, the Court, 245 U.S. at page 472, 38 S.Ct. at page 150, considered "A regulation promulgated as an order of the Post Office Department" the counterpart of the regulation contained in 39 C.F.R. 50.23(c) above, and held that such "regulation was obviously intended to supplement section 194 of the Criminal Code, under which the defendants [there] were indicted," and that such rule was intended to protect mail "until it shall reach the persons to whom it is addressed." If the rule and statute considered in the Rosen case (which was a prosecution under what now appears as Section 1708 of the present Criminal Code) was sufficient to spell out a "rule for the conduct" that extended protection to mail until it reached "the *manual* possession of the person" to whom it was addressed, then there can be no doubt but that such protection continues to exist, and that it was the intent of the Congress that it should exist when it specifically provided to that effect in Section 1702, supra. The phrase "before it has been delivered to the person" as used in said section, connotes a manual delivery of a letter "to whom it [is] addressed." Until that is done, the protection of a "letter" once deposited in a post office continues. United States v. McCready, and United States v. Hilbury, supra.

Under the stipulated facts the defendant took a letter with intent to steal it, and converted the contents thereof to her own use. That she took the same from a table in the hallway on which the "letter" had been placed, after innocently being taken from an authorized depository for mail matter, does not militate against or exculpate her from the offense denounced in Section 1702, supra. The "letter" had not "been delivered to the person to whom it was directed". Patently, the protection afforded by said section for such "letter" was then existent, as intended by the Congress. The Congress has the right to protect a "letter" with whatever is absolutely necessary to assure its delivery "to the person to whom it was directed".

Since the recent deluge of checks transmitted through the mails by

the Federal and State Governments we know that there are many persons engaged in stealing, embezzling, secreting and diverting such mail matter from delivery as intended by the sender. We judicially notice that 7 such persons have been sentenced in this Court within the past two years for offenses under Section 1702, supra, on factual circumstances indistinguishable from those involved in the instant case. Those cases involved bell-boys embezzling "letters" containing checks delivered to them for distribution to guests (Case No. 18636); tenants of housing project taking "letters" from a ledge in apartment building office (Cases Nos. 18703, 18979); occupants of apartment buildings taking "letters" from desks (Cases Nos. 19088, 19177 & 19625); and the taking of a "letter" placed on bed in a hospital in the absence of patient (Case No. 19123). The "letters" in each such case contained governmental checks. Some of those so sentenced in this Court for violation of the Section 1702, supra, are now serving the term of their sentences. To sustain defendant's contention here, this Court would be compelled to vacate all such sentences. That we shall not do until directed otherwise by controlling authority. Legislative intent should not be extended to cover the necessity of a case; but, public policy, clearly evident, coupled with expressed legislative intent, compels an expansive application to reach a mischief. Our conclusion is that defendant is guilty of the charge here made against her. Particularly must this be true when it has been "held at common law that a letter as such has no intrinsic value and is not a subject of larceny." 52 C.J.S., Larceny, § 3, p. 797; 32 Am. Jur., p. 990.

Defendant's motion for directed verdict, made at the close of this case, is denied. A general verdict of guilty is filed simultaneously herewith. Defendant will appear before the Court for sentence on Friday, December 23, 1955, at 10:00 o'clock, a. m.

It is so ordered.