349 F.Supp. 1297 (1972)
AMERICAN POSTAL WORKERS UNION, AFL-CIO, DETROIT LOCAL, Plaintiff,
v.
The INDEPENDENT POSTAL SERVICE OF AMERICA et al., Defendants.
Civ. A. No. 38323.
United States District Court, E. D. Michigan, S. D.
August 17, 1972.
*1298 Bernard J. Fieger, Southfield, Mich., for plaintiff.
Robert G. Russell, Detroit, Mich., for defendants.

RULING ON MOTION FOR SUMMARY JUDGMENT
PHILIP PRATT, District Judge.
Plaintiff American Postal Workers Union, AFL-CIO, Detroit Local, seeks to enjoin the defendants from conducting a private postal system for profit on the grounds that defendants' actual and contemplated business is in derogation of the postal monopoly conferred upon the United States Government by Article I, Section 8, Clause 7 of the United States Constitution and as implemented by various statutory provisions (18 U.S.C. §§ 1694, 1696, 1697 and 39 U.S.C. § 601).
Defendant, The Independent Postal Service of America, Inc., an Oklahoma corporation, is in the business of delivering printed, written and package material in certain localities and is expanding its operations throughout the United States by granting franchises to individuals and other entities. The individual defendants have obtained a franchise from the corporation.
It is the claim of the plaintiff that defendants' actual and anticipated activities violate the criminal sanctions Congress has imposed to delimit and preserve the postal monopoly and that a direct result of the violations is economic injury to the members the union represents.
The threshold issue raised by defendants in their motion for summary judgment, the standing of plaintiff to sue, is crucial and dispositive. This Court is satisfied that under the present state of the law, plaintiff lacks standing to institute this type of action.
While the parties in their respective briefs argue extensively the applicability of Hardin v. Kentucky Utilities Co., 390 U.S. 1, 88 S.Ct. 651, 19 L.Ed.2d 787 (1968); Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968); Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970); and Barlow v. Collins, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970), there is appreciable doubt that such cases have any but a peripheral influence on the case at bar.
Certainly the "standing to sue" concept is being re-examined by the Supreme Court and expanded by its most recent decisions, but see Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). But error will surely follow if the principles enunciated in those recent decisions are not considered in the context of their own setting.
The current "standing to sue" discussion, it must be emphasized, revolves around the circumstance of a private party seeking equitable relief as against a governmental agency; it is the agency action that is attacked. The Supreme Court in Data Processing promulgated its standing test thusly:
". . . the question whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." (397 U.S. at 153, 90 S.Ct. at 830.)
The failing of plaintiff is its reliance on the "zone of interest" test in a suit which does not involve agency action but rather an action by a private party against another private party. More accurately, plaintiff asserts that the attitude of the Supreme Court in the agency action cases reflects a broadening tendency and presages the extension of the "zone of interest" test (or perhaps an even more liberal test, see concurring and dissenting opinion in Data Processing, supra) to private party litigation.
Such an analysis is, however, faulty; not only because of the factual differences, but because factors other than the "zone of interest" are paramount.
Assuming other conditions and jurisdictional requisites are met, a private plaintiff choosing the federal forum *1299 is required to show a base for his standing under the Constitution, a statute or the common law. Plaintiff here does not assert any deprivation of a Constitutional right or privilege, but relies on the Postal laws, especially on sections indicating the concern of the Congress in the economic well-being of postal employees. (39 U.S.C. §§ 101(c), 1001, 1201-1209 (1970)).
This Court cannot, however, accept the contention that the stated Congressional concern for postal employees reveals an intent to permit the enforcement of criminal provisions by those employees or their representatives.
On the contrary, the overriding consideration is one of public policy, i. e., may criminal sanctions be imposed through the instigation of private suits seeking equitable remedies, particularly where the Attorney General is specifically delineated as the enforcement official.
It is this Court's opinion that under the circumstances of this case, the response must be a negative one. Aside from the inherent danger of violating the Constitutional rights of a defendant in such a case, other important factors come into play.
It is to be noted, for example, that in the maintenance of the postal monopoly, Congress has not excluded the private postal carrier (39 U.S.C. § 601 (1970)) and postal regulations promulgated by the postal department permit certain types of written, printed and package material to be delivered by private carrier (39 C.F.R. Part 152 (1972); United States Post Office Department, Office of the General Counsel, Publication 111, Restrictions on Transportation of Letters (1967)). Thus, enforcement of criminal provisions, as well as methods and programs calculated to promote efficient operation of the postal service, is left to the discretion of the department. To permit private actions such as this would thwart that Congressional purpose and perhaps undermine even the efforts of Congress to protect postal employees. Certainly only confusion could result from disparate determinations by different district courts as to types of material coming within the purview of a certain regulation.
The "power of Congress to protect the mail is exclusive" (United States v. Maxwell, 137 F.Supp. 298, 301 (W.D.Mo., 1955), affirmed 235 F.2d 930 (8th Cir. 1956), cert. den. 352 U.S. 943, 77 S.Ct. 266, 1 L.Ed.2d 239 (1956)) and the courts will employ their equitable power to assist in that endeavor (In re Debs, 158 U.S. 564, 15 S.Ct. 900, 39 L. Ed. 1092 (1895)), and lacking any specific suggestion in the legislative history of the Postal Reorganization Act of 1970 (1970 U.S. Code, Congressional and Administrative News, p. 3649 et seq.) of an intent to create a cause of action, plaintiff here has no standing to bring this suit.
The policy considerations affecting the statutory basis for standing, or lack of it, also prevail if a common law basis is asserted. As stated in the excellent article of Professor Kenneth Culp Davis, entitled The Liberalized Law of Standing in 37 The University of Chicago Law Review, 450 (1970):
"By and large, the state courts follow the common law attitudes in governing judicial review of administrative action, so that the judicial doors are widely open to anyone who asserts a legitimate interest; one who is hurt in fact has standing unless a statute or a `public policy' requires otherwise."
"Public policy" in this case is not dissimilar in content and applicability from that discussed by Chief Judge Wilson in Bass Anglers Sportsman's Society of America v. Scholze Tannery, Inc., 329 F.Supp. 339 (E.D.Tenn.1971) and the cases cited therein, and is, in this Court's opinion, an insurmountable bar to plaintiff's suit.
The Court is not unmindful of the opinion and ruling in National Association of Letter Carriers, A.F.L.-C.I.O. v. Independent Postal System of America, *1300 Inc., 336 F.Supp. 804 (W.D.Okl., 1971), and recognizes the contrary result herein. Perhaps this strengthens the argument that confusion can only result if private actions of this sort are permitted.
In view of the foregoing and pursuant thereto, defendants' motion for summary judgment is hereby granted.