UNITED STATES v. SAFFORD.

(District Court, E. D. Missouri, E. D. February 9, 1895.)

No. 3,880.

POST OFFICE—EMBEZZLING LETTERS.

The statute making it a crime to take a letter from the post office, or which has been in any post office, "or in the custody of any letter or mail carrier before it has been delivered to the person to whom it is directed" (Rev. St. § 3892), does not extend to the case of a letter stolen from the desk of the addressee, upon which it has been placed by the mail carrier, in the absence of any one to receive it.

This was an information against Edward W. Safford, for violation of Rev. St. § 3892, relating to the abstraction or embezzlement of letters from the post office, etc.

Wm. H. Clopton, for the United States.

PRIEST, District Judge. The defendant, a youth of 17 years, has been arraigned under an information charging him with hav-

ing embezzled a letter containing an article of value, which had been in the post office of the United States at St. Louis, and had not been delivered to the person addressed, namely, the Druggist Publishing Company. Defendant, having no counsel, expressed a desire to plead guilty to the charge, and, in order to gauge the punishment, inquiry was made concerning the circumstances of the offense. In response the district attorney informed the court (while recommending that the sentence be suspended during good behavior) that the letter had been placed by the mail carrier upon the desk of the Druggist Publishing Company's manager, to whom it was addressed, from whence it had been stolen by the defendant, who had gained unlawfully an entrance into the office. Is this an offense under the provisions of section 3892, Rev. St. U. S.? That section provides that "any person who shall take any letter, postal card or packet, * * * out of a post-office or branch post-office or from a letter or mail carrier, or which has been in any post-office or branch post-office or in the custody of any letter or mail carrier, before it has been delivered to the person to whom it is directed, with a design to obstruct the correspondence," etc., "or shall secrete, embezzle or destroy the same," shall be punished by fine or imprisonment or both. The language of this statute is very general and very comprehensive; sufficiently so to punish any person who might be appointed to receive the mail of another, and, having lawfully received it, should thereafter form a design to embezzle or destroy it. The courts all agree that such an interpretation should not be given to this statute, and this is obviously correct. Several considerations lead unerringly to such a conclusion. Congress only intended to secure the sanctity of the mail while it was in the custody of the postal department en route from the sender to the person to whom it was directed. Beyond the protection of the mail while discharging the functions of postal service with respect to it the federal government has no rightful power or legal concern. Its right to impose any penalties is an incident to its power to establish post offices and post roads, and in the discharge of this function to protect the correspondence from the depredations of its own employés, as well as the unlawful aggressions of others. It would be reprehensible to assume that congress made a pretext of this power to establish rules of good conduct and punish violations of them between a principal and agent or to promulgate police regulations independent of the postal service, and after the postal functions had been performed. Such matters are of local concern, amenable to state law. It is but just that one who, having been delegated by another to receive his mail, and, having received it, should embezzle it, should be punished; and it is likewise just that one who should steal a letter after it had been delivered, and before it came into the manual possession of the party to whom it was directed, should be punished; but we should not allow our anxiety to suppress immoralities and punish crime to cause us to ignore the proper tribunals and proper authority for the redress of grievances of this character. So a statute, broad in its terms, will be restricted by construction to the objects which the legislature had in view, and

especially will its terms be restricted within the organic authority of the enacting body. Farnum v. Blackstone Canal Co., 1 Sumn. 46, Fed. Cas. No. 4,675; Sage v. City of Brooklyn, 89 N. Y. 189; People v. McClave, 99 N. Y. 83, 1 N. E. 235; Suth. St. Const. §§ 246, 324. Speaking with respect of the construction of this statute, Judge Betts, with whom was sitting Judge Nelson, in U. S. v. Parsons, 2 Blatchf. 104, 106, Fed. Cas. No. 16,000, said:

"What, then, is the true import and force of the phrase, 'shall have been in a post office or in the custody of a mail carrier,' and of the phrase, 'before it shall have been delivered to the person to whom it is directed?' Are they of unlimited extent, covering every condition of a letter until it reaches its rightful destination? To give the language this construction would be to continue letters which had been once in the mail under the power and control of the federal government, in every change and transfer from person to person and place to place, and without limitation of time. Legislation of such a scope and extent would clearly not be in furtherance of the functions and duties of the post-office department, but in protection of the private property of individuals after it had become detached from that department and was wholly out of the charge of its agents. Such legislation would thus necessarily take quality and form of a municipal regulation governing the relations and responsibilities of individuals to each other in respect to letters and their contents which had been in the post office, although not obtained from the post office or any of its agents, or in the possession of a party through any act of fraud or deceit against the post-office laws. And congress would, in effect, be invested with the power to compel every person into whose possession a letter which had been in the post office should come to take upon himself the responsibility of carrying and delivering it to the person to whom it should be directed. We think that the object of this twenty-second section does not look beyond a possession of letters obtained wrongfully from the post office or from a letter carrier. Its design is to guard the post office and its legitimate agents in the execution of their duties in the safe-keeping and delivery of letters. After the voluntary termination of the custody of a letter by the post office or its agents, the property in and right of possession to it belong wholly to its real proprietor, and his rights are under the guardianship of the local law, and not of that of the United States."

In U. S. v. Driscoll, 1 Lowell, 303, Fed. Cas. No. 14,994, Judge Lowell, in considering this statute with respect of an indictment predicated upon it, said:

"The scope and purpose of these clauses and of the whole section appear to be to protect the mails from every kind of danger while in the custody of the United States. Some of the language is broad enough to include within its literal meaning every letter that has ever been in a post office, and every person that can deal with any such letter before it reaches the manual possession of its owner. Taken literally, the first clause is broad enough to cover even the person to whom the letter is addressed. But the law must have a reasonable construction, and one in accordance with the subject-matter, which is the due and proper custody and delivery of the mail. It must be taken to refer to letters with which the United States have concern under their power and duty to transport and deliver the correspondence of the country. It cannot be that the owner of a letter would be liable for such an act, and it is clear that the same rule applies to the agent. The first clause refers to an unlawful taking, whether with or without the connivance of an officer of the department; and without such a taking the offense is not complete. Here the taking was lawful. The second clause of the section is not so clear. Under this clause the taking is not an essential element of the offense. The law reads 'take or open,' etc. The language is disjunctive. But I think the delivery means in this, as in the other, clause, delivery to the person or to his authorized agent. When such a delivery has been made, the government is discharged of further responsibility, and its functions cease to

operate upon the letter. If the clerk or servant of the owner betrays his trust, that is a matter to be looked into by the authority of the state, whose laws regulate such agencies. If those laws make the act an embezzlement, there will be a remedy; if they do not, it would not be becoming in congress to do so if it could,—which may be doubted. These letters had been delivered to the persons to whom they were directed, because they had been delivered to a servant duly authorized by them to receive their letters. Two cases have been cited by the defendant's counsel,—U. S. v. Parsons, 2 Blatchf. 104, Fed. Cas. No. 16,000, and U. S. v. Sander, 6 McLean, 598, Fed. Cas. No. 16,219,—in the latter of which it is held that if a letter had been delivered to an authorized person, and the opening took place afterwards, this statute did not apply, because delivery to the agent or servant is delivery to the person to whom the letter is addressed; and in the former the judgment was that the United States was discharged from further responsibility in the premises after a bona fide delivery, though to the wrong person, himself innocent, when the offense was begun and consummated by a stranger, after the delivery had been perfected. The views of the judges in these cases were fortified by considerations derived from the natural functions, so to speak, of the federal government, it not being probable that the United States would attempt to regulate the relation of master and servant. I am informed upon good authority that Judge Sprague has made a similar decision. I have considered this question once before. A letter had been left at a shop, where the letters of the person to whom the particular letter was addressed were, with his knowledge and consent, usually left. A stranger—the 'defendant—intermeddled with such a letter after such delivery, and was indicted under the latter clause above cited; and, the case being by consent submitted to me in a somewhat informal way, I ruled upon it, and the result was a nol. pros. The government has cited only one case,—U. S. v. Pond, 2 Curt. 265, Fed. Cas. No. 16,067,—but it is one of high authority, though, I suppose, not actually binding on this court, which has concurrent jurisdiction of all criminal cases, not capital. The point there came up on a motion to quash. Such a motion is always addressed to the discretion of the court, and I understand the decision to go only to this extent: that it is not necessary to allege in the indictment that the letter was in custody of the United States at the time it was opened. This is undoubtedly so. The remarks of Mr. Justice Curtis go further, no doubt; still I do not consider them to go to the length necessary to support this prosecution, because they do not refer to a delivery of the letter to one authorized to receive it. Judge Sprague's opinion was given after the decision of U. S. v. Pond had been made, and that case was called to his attention, and he must have considered, as I do, that it was not an authority to the point now in controversy."

In U. S. v. Thoma, 25 Int. Rev. Rec. 171, Fed. Cas. No. 16,471, the defendant was indicted under section 3892 for embezzling a letter which had been in the post office before the same had been delivered to the person to whom it was addressed. The letter was sent in care of the defendant. Judge Nixon in that case said:

"The design of the section is to guard the inviolability and safety of communications through the mails from the start to their destination. Any tampering with a letter during that period, either by an official of the department or by other person, with a design to obstruct the correspondence, or to pry into the business or secrets of another, or any secretive embezzlement or destruction of the same, is carefully guarded against. But the delivery of the letter to the defendant terminated the action and authority of the post-office department over the subject-matter. It was directed to the defendant's care. He was designated as the person to receive it from the post office. So far as the department was concerned, its responsibility ended with the delivery to him. Whether he retained it or passed it over to the legal representatives of the deceased owner, or whether he had a right to retain it as against their demands for it, are questions for the local laws to settle, just as they determine all other questions relating to the custody or ownership of property."

In the case of U. S. v. Sander, 6 McLean, 598, Fed. Cas. No. 16,219, Judge Willson said of this statute:

"But a more serious and grave question is raised by defendant's counsel in requesting the court to charge the jury 'that if they should find the letter in question had been delivered by the postmaster at Vermilion to the defendant, who was at the time a fully-authorized agent of Phoebe Sturdevant to receive it, that any embezzlement by him thereafter, and before delivery to her, does not constitute an offense under the statute.' It is claimed by counsel that a delivery to an authorized agent is a delivery to the principal, and that when this is done the functions of the post-office department, and the powers of the federal government are at an end in the premises. We believe this position of counsel to be well taken. It is a familiar principle of law that an act done by an authorized agent within the scope of his authority is an act of the principal. 'Qui facit per alium facit per se.' Hence it is that the delivery of goods by a third person to an agent, and his acceptance of them for his principal, is, in contemplation of law, a delivery to and acceptance by the principal. So payments made a third person to the agent in the course of his employment is payment to the principal, and, whether actually paid to the principal or not, by the agent, it is conclusive on him. A letter, packet, or other valuable thing, having been committed to the post-office department for carriage and delivery, if once parted with by the postmaster to a person authorized to receive it, from that moment ceases alike to be under the control of the department and the power and authority of the general government. The sanction by the federal courts of the contrary doctrine would be dangerous in its tendency, and subversive of reserved state authority. No power is given to congress to legislate upon the subject, except what is incident to and necessary to carry out the grant contained in the eighth section of the first article of the constitution. The grant is simply 'that congress shall have power to establish post offices and post roads'; and, while we would not adopt the limited and narrow construction given to this grant by President Monroe in his special message to congress of 4th May, 1822, yet we would not extend implied powers further than what is necessary to carry out with safety to the public the legitimate operations of the post-office establishment. When functions of the department are exhausted by the proper delivery of mail matter (once placed in its charge), such mail matter is then beyond the reach and authority of any legislation of congress."

In the foregoing cases the letters were delivered to persons authorized to receive them, while here the letter which the defendant stole was left by the carrier, according to the usual custom of delivery, upon the desk in the office of the person to whom it was directed. This, it is contended, makes a material difference. We do not think so. The one was physical and moral depository, while the other merely a physical. Each was the appointed receptacle of the person addressed, and the delivery to either was an acceptance by the person addressed, and an acquittal of the post-office department of its obligation with respect to the mail. Whenever the post-office department or its agents voluntarily parts with the mail, that is an end of the relation to and authority over it. Of course, if one by deceitful or artful practices should persuade a mail agent to deliver to him correspondence which he was not lawfully entitled to receive, it would be an offense under this statute, because his artifice would give quality and character to the act, and the deceitful persuasion stand as a coercive and unlawful taking. But whatever one party appoints or acquiesces in as an acceptance and the other recognizes as a delivery must be acknowledged and enforced as a delivery by the courts. Where the minds of the parties agree, it is need-

less to attempt to destroy the force of this concurrence by refer-ence to what the courts have said in cases where the parties dis-agree both as to facts and inferences from disputed facts. In this case, unless we should hold that placing the letter upon the desk as it was by the carrier was a delivery (of which there can be not the slightest doubt), we should be compelled to hold that it had been abandoned by the carrier, and for this the statute prescribes a punishment which would seem to be adequate to insure fidelity upon the part of carriers and post-office agents. It is desirable, of course, to protect correspondence from pub-licity through the instrumentality of prying, officious, and evil-disposed persons, after as well as before it comes into the manual possession of those for whom it is intended; but the federal gov-ernment has exhausted its power in this direction when it has established such regulations as may occur to it as efficient so long as the mail is in its actual custody en route. The mere fact that it has had a mission to perform with respect to such correspondence does not invest letters with a quality of federal interest or con-cern which ever afterwards entitles it to exert its authority to protect them. They still remain private property, and subject to the ordinary rules of such property. The post office is merely an agent for the delivery of the mail, and has only the right to protect itself in the discharge of this function against the depre-dations of its agents and others while performing its undertaking. However desirable it may be, and however strong may be the policy which would suggest it, that the mail shall be kept sacred, we can look to congress for efficient aid only so far as it may have authority as incidental to its proprietary and constitutional right to establish "post offices and post roads." The enforcement of general regulations of police must come from the states.

My attention has been called to the case of U. S. v. McCready, 11 Fed. 225, as expressing views contrary to those I entertain. While I have the profoundest respect for the learning and ability of the judge who delivered that opinion, I find the more satis-factory reasons and the soundest canons of interpretation in the opinion of the several able jurists whom I have heretofore quoted. The defendant's plea of guilty will not be accepted, under the circumstances, until he shall have had opportunity to consult with counsel whom I shall appoint to defend him.