**UNITED STATES of America**

v.

**Eddie CHAPMAN, Defendant.**

**Cr. Nos. 45856, 46031.**

United States District Court
E. D. New York.

Dec. 15, 1959.

448

Cornelius W. Wickersham, Jr., U. S. Atty., Brooklyn, N. Y., Richard B. Cooper, Brooklyn, N. Y., of counsel, for the United States.

Florence M. Kelley, New York City, for defendant, Maurice Brill, New York City, of counsel.

ZAVATT, District Judge.

■ In this case, the defendant is charged under two separate indictments (one of six counts and one of one count) of having taken six letters before they had been delivered to the respective addressees. Two counts (Counts Three and Six) were dismissed during the trial on the motion of the defendant with no objection by the Government. Counts One of the multi-count indictment and the single count indictment charge the defendant with a violation of 18 U.S.C. § 1702.[1] Counts Four and Five charge the defendant with a violation of 18 U.S.C. § 1708.[2] Count Two charges the defendant with a violation of 18 U.S.C.

1. "Whoever takes any letter, postal card, or package out of any post office or any authorized depository for mail matter, or from any letter or mail carrier, or which has been in any post office or authorized depository, or in the custody of any letter or mail carriers, before it has been delivered to the person to whom it was directed, with design to obstruct the correspondence, or to pry into the business or secrets of another, or opens, secretes, embezzles, or destroys the same, shall be fined not more than $2,000 or imprisoned not more than five years, or both."

2. "Whoever steals, takes, or abstracts, or by fraud or deception obtains, or attempts so to obtain, from or out of any mail, post office, or station thereof, letter box, mail receptacle, or any mail route or other authorized depository for mail matter, or from a letter or mail

§ 1706.[3] These remaining five counts are framed in the words of the appropriate statute and are set forth in the margin.[4]

At the close of the Government's case, the defendant moved to dismiss Counts One, Two, Four and Five of the multicount indictment and the single count indictment on the grounds that (assuming the facts to be as testified to by the Government's witnesses) (1) the letters taken by the defendant were taken after they had been delivered to the respective addresses within the meaning of "delivery" as used in § 1702; (2) the bag from which the letters were taken was not a "mail bag" within the meaning of § 1706; and (3) that that bag was not an "authorized depository for mail matter" within the meaning of § 1708.

From the evidence adduced by the Government and the inferences most favorable to the Government which the jury could have drawn therefrom, the jury could have found as follows: that

carrier, any letter, postal card, package, bag, or mail, or abstracts or removes from any such letter, package, bag, or mail, any article or thing contained therein, or secretes, embezzles, or destroys any such letter, postal card, package, bag, or mail, or any article or thing contained therein;

\*     \*     \*     \*     \*

Shall be fined not more than $2,000 or imprisoned not more than five years, or both."

3. "Whoever tears, cuts, or otherwise injures any mail bag, pouch, or other thing used or designed for use in the conveyance of the mail, or draws or breaks any staple or loosens any part of any lock, chain, or strap attached thereto, with intent to rob or steal any such mail, or to render the same insecure, shall be fined not more than $1,000 or imprisoned not more than three years, or both."

4. (Criminal No. 45856)

Count One.

On or about the 18th day of March, 1959, at Brooklyn, New York, within the Eastern District of New York, the defendant, Eddie Chapman, did take a letter addressed to

Julius Berenson
Jewish Chronic Disease Hospital
E. 49th St. and Rutland Road
Brooklyn 3, New York

which had been in a United States Post Office and authorized depository for mail matter, before it had been delivered to the person to whom it was directed, with design to obstruct the correspondence of another, and the defendant, Eddie Chapman, did open and embezzle the same. Title 18 U.S.C. § 1702.

Count Two.

On or about the 31st day of March, 1959, at Brooklyn New York, within the Eastern District of New York, the defendant, Eddie Chapman, did loosen a strap attached to a mail bag used and designed for use in the conveyance of the mail, with intent to steal such mail. Title 18 U.S.C. § 1706.

Count Four.

On or about the 31st day of March, 1959, at Brooklyn, New York, within the Eastern District of New York, the defendant, Eddie Chapman, did steal, take and abstract from and out of an authorized depository for mail matter, a letter addressed to

Mrs. E. Schechter
Jewish Chronic Dis. Hospital
Rutland Rd & E. 49th St.
Bklyn, N. Y.

Title 18 U.S.C. § 1708.

Count Five.

On or about the 31st day of March, 1959, at Brooklyn, New York, within the Eastern District of New York, the defendant, Eddie Chapman, did secrete and embezzle a letter addressed to

Mr. Sam Pomerantz
86 East 49 Street
Brooklyn 3, New York
Pavilion B4

which letter had been stolen, taken and abstracted from an authorized depository for mail matter. Title 18 U.S.C. § 1708.

(Criminal No. 46031)

On or about the 31st day of March, 1959, at Brooklyn, New York, within the Eastern District of New York, the defendant, Eddie Chapman, did take a letter addressed to

Ethel B. Weinstein
86 East 49th Street
Brooklyn 3, New York

out of an authorized depository for mail matter, which letter had been in a United States Post Office and authorized depository for mail matter, before it had been delivered to the person to whom it was directed, with design to obstruct the correspondence of another, and the defendant, Eddie Chapman, did secrete the same. Title 18 U.S.C. § 1702.

the addressees named in the indictments were patients at the Jewish Chronic Disease Hospital; that the letters referred to in Counts One, Four, Five and in the single Count indictment were addressed to patients of that Hospital; that the defendant, on the dates mentioned in said counts and in Count Two, and for some time prior thereto, was an employee of said Hospital and that one of his duties was to drive the Hospital truck to the Rugby Station Post Office in Brooklyn, New York, five days per week and there pick up mail addressed to patients at the Hospital and to deliver the same to the Hospital mail room, from which it was distributed to the addressees by other employees of, and by some patients at, the Hospital; that, on the morning of March 31, 1959, the defendant drove a hospital truck to the Post Office as was his custom; that he went to the second floor thereof where mail addressed to the Hospital and its patients was already in United States mail bags and had been placed by the postal clerks on a hand truck allocated for the Hospital; that these bags contained letters securely tied in batches of 100; that each bag was closed by a rope constricting the neck of the bag and the rope was secured by a clamp; that the defendant was never given any letter mail that was not so tied and bagged; that the defendant wheeled the truck to the elevator, descended to the first floor, loaded the mail on the hospital truck, and drove the truck back to the Hospital; that some time between entering the elevator in the Post Office and arriving at the Hospital the defendant opened a mail bag as alleged in Count Two of the multi-count indictment and did steal, take and abstract therefrom two bundles of letters among which were the letters specified in Counts Four and Five of the multi-count indictment and with reference to the single Count of the other indictment, did take therefrom a letter addressed as stated therein with the design stated therein. The jury could also have found that by a similar sequence the defendant came into possession on March 18, 1959 of the letter referred to in Count One of the multi-count indictment and that it contained a check to the order of cash which the defendant thereafter cashed and converted to his own use. There was also evidence from which the jury could have found that the defendant had been opening mail bags and ransacking their contents for some time prior to the indictment dates and had a criminal intent when he picked up the mail on the indictment dates.

The substance of 18 U.S.C. § 1702 has been part of the Federal law since 1825. 4 Stat. 109. Immediately prior to the 1948 revision of Title 18, the substance of present § 1702 appeared in an omnibus provision which also contained the substance of present § 1708. 18 U.S.C. § 317 (1946). The predecessors of § 1702 have been construed to apply to letters only between the time when they are mailed and the time when they have become detached from the Post Office Department and are wholly out of the charge of its agents. United States v. McCready, C.C.W.D.Tenn.1882, 11 F. 225; United States v. Parsons, C.C.S.D. N.Y.1849, 27 Fed.Cas. page 451, No. 16,000. "Congress only intended to secure the sanctity of the mail while it was in the custody of the postal department enroute from the sender to the person to whom it was directed." United States v. Safford, D.C.E.D.Mo.1895, 66 F. 942, 943; United States v. Driscoll, D.C.D.Mass.1869, 25 Fed.Cas. page 914, No. 14994. They have also been construed to mean that letters are "delivered" when they are delivered either to the addressee or his authorized agent. United States v. Maxwell, 8 Cir., 1956, 235 F.2d 930, 932, certiorari denied, 1957, 352 U.S. 943, 77 S.Ct. 266, 1 L.Ed.2d 239; United States v. Bullington, C.C.N.D.Ala. 1908, 170 F. 121; United States v. Sander, C.C.N.D.Ohio 1855, 27 Fed.Cas. page 949, No. 16,219. Although these predecessors of § 1702 proscribed "embezzlement" (as does § 1702), the crime of "embezzlement", in order to come within these provisions, had to be committed before delivery in order to constitute a violation thereof. Thus where a letter

was delivered to an authorized agent who thereafter embezzled the letter, such an embezzlement was not deemed a violation of the predecessor of § 1702 because in such a case the embezzlement occurred after the letter had become detached from the Post Office and wholly out of the charge of its agents, i. e., after the letter had been delivered. United States v. Sander, supra. There is strong dictum at page 943 of 66 F. in United States v. Safford, supra, construing 4 Stat. 109 as follows:

"It would be reprehensible to assume that congress made a pretext of this power to establish rules of good conduct and punish violations of them between a principal and agent or to promulgate police regulations independent of the postal service and after the postal functions had been performed. Such matters are of local concern, amenable to state law. It is but just that one who, having been delegated by another to receive his mail, and, having received it, should embezzle it, should be punished * * * but we should not allow our anxiety to suppress immoralities and punish crime to cause us to ignore the proper tribunals and proper authority for the redress of grievances of this character."

It has been suggested that such an interpretation completely reads embezzlement out of the statute, because, so the argument goes, embezzlement presupposes rightful delivery to an agent who thereafter converts to his own use. Cf. United States v. Maxwell, supra. But this argument takes too narrow a view of embezzlement. For example, take the case of a letter addressed to A that the postal authorities mis-direct to B. B thereby comes into rightful possession although he was never authorized by the addressee, A, to receive his mail. If B were now to convert A's letter to his own use, he would be committing the crime of embezzlement as contemplated by § 1702 because it was committed "before [the letter was] delivered to the person to whom it was directed" or his authorized agent. See 9 Opinions of the Solicitor of the P. O. Dep't 666 (1951). But cf. United States v. Parsons, C.C.S.D. N.Y.1849, 27 Fed.Cas. page 451, No. 16,-000.

Neither § 1702 nor its predecessors specify what constitutes delivery. Under the statute as it existed prior to the 1948 revision of Title 18 it was held in a long line of cases that delivery to B of a letter addressed to A in care of B was delivery to A and that a theft of such a letter thereafter by B or by any one else was not a violation of the predecessor section. United States v. Huilsman, D.C. E.D.Mo.1899, 94 F. 486; United States v. Lee, C.C.N.D.Ga.1898, 90 F. 256; United States v. Thoma, D.C.D.N.J.1879, 28 Fed.Cas. page 74, No. 16,471; United States v. Mulvaney, C.C.S.D.N.Y.1859, 27 Fed.Cas. page 22, No. 15,833.

The stated rationale of these "care of" cases is that the sender by his instructions controls to whom the mail will be delivered. United States v. Lee, supra. See also 39 C.F.R. § 44.1(1955). The Post Office contemplates no better or further delivery than that called for by the sender. So when the sender authorizes the Department to leave A's mail in B's care, the Department's job is done when it gives the mail to B.

There are, however, certain categories of addressees to whom the Department delivers the mail in accordance with its own regulations and not solely in accordance with the directions of the sender. Stated another way, the regulations are notice to senders of how the Department will interpret the sender's directions.[5]

■ Title 5 U.S.C.A. § 22 authorizes the head of each executive department

5. See 39 C.F.R. § 1.1 (1955) ("Introduction"):
"[These] regulations * * * are intended to assist users of [the mail] services in obtaining the maximum benefits from its personnel and facilities. Thus, include * * * an explanation of the collection and delivery services of the Department."

to prescribe regulations not inconsistent with law for the distribution and performance of its business and the preservation of property appertaining to it. Such regulations have the force of law if not inconsistent with the statute they implement. Rosen v. United States, 1918, 245 U.S. 467, 38 S.Ct. 148, 62 L.Ed. 406. The Postmaster General has prescribed regulations as to the delivery of mail. These regulations (effective January 1, 1956) provide that mail marked in care of another "is delivered to the first of the two persons named who may call for it; or to the address of the person in whose care it is directed in the absence of instructions from the addressee." 39 C.F.R. § 44.1(e) (1955). The apposite regulation immediately preceding the 1955 revision was to the same effect. 13 Fed.Reg. 8935 (1948). There is a specific regulation as to the delivery of mail addressed to patients or inmates at institutions. It provides that such mail "unless otherwise directed by the addressee, is delivered to the institution authorities, who in turn will deliver the mail to the addressee in accordance with the institution's rules and regulations." 39 C.F.R. § 44.6(a) (1955). The equivalent regulation in effect immediately preceding the 1955 revision provided that such mail, in the absence of an order from the addressee "shall be delivered as though addressed to the institution." 13 Fed.Reg. 8935 (1948). These regulations were not cited by either the defendant or the Government in their memoranda of law or on the oral argument of the defendant's motion to dismiss. It is not apparent why the language of the 1948 regulation on this point was changed in the 1955 revision nor whether any change in substance was intended. The court construes the 1955 revision in the light of the earlier provision as doing no more than specifying the duty of the institution to deliver the mail to the addressee without altering the fact that delivery to the institution is delivery to the addressee as far as the Post Office Department is concerned. It reads this regulation to mean that, as to such letters, they become detached from the Post Office Department and wholly out of the charge of its agents when they are delivered to the institution.

Both the defendant and the Government considered only the question of whether or not the defendant was an authorized agent and whether delivery of the mail to him at the Post Office was delivery to the respective addressees within the cases decided by federal courts solely on the basis of judicial interpretation of the apposite provisions of the United States Code, i. e., cases which did not consider the effect of departmental regulations, if any, then in force. The court will assume that, had the parties been aware of and had they cited 39 C.F.R. § 44.6(a) (1955), the defendant would have argued that he was an institution authority when he received the mail on the indictment dates and that the Government would have contended to the contrary. The court will assume that the Government contends that "authority", as used in this regulation, means an "authorized agent" within the meaning of that term as found in cases hereinafter referred to, cited by the Government.

The Government, therefore, contends that the defendant was not an authorized agent of the Hospital or of the respective addressees and not one of "the institution authorities" when he received the mail at the Post Office on the indictment dates because, having a criminal intent on those occasions, he had abandoned the object of his agency and was acting for himself rather than for the Hospital or the addressees. The Government cites three decisions of the New York Court of Appeals which reflect the rule in that state which insulates an innocent principal from the peculations of his agent and relieves him of civil liability to a third person when the agent abandons the object of his agency and acts for himself by committing a fraud for his own exclusive benefit. Henry v. Allen, 1896, 151 N.Y. 1, 11, 45 N.E. 355, 36 L. R.A. 658; Prudential Ins. Co. of America v. National Bank of Commerce, 1920, 227 N.Y. 510, 125 N.E. 824, 15 A.L.R.

146; Credit Alliance Corp. v. Sheridan Theatre Co., 1925, 241 N.Y. 216, 149 N.E. 837. See also Weisser's Adm'rs v. Denison, 1854, 10 N.Y. 68, 77 and Restatement (Second) Agency § 112 (1958).

But it is plain that the rule of Henry v. Allen expressing as it does a policy for determining civil liability, cannot be mechanically applied here where the issue is not who shall bear the loss but whether a governmental function is completed. In this connection it is well to note the actual mechanics of the rule. The ultimate question of liability in the cases cited turns on the subsidiary question of whether the principal had notice of the agent's fraud. Of course, the underlying rule is that notice to an agent is notice to the principal. Restatement (Second), Agency § 268 (1958). But the cases recognize that such constructive notice is a legal fiction that should not be indulged in when the very success of the agent's scheme requires that his principal be kept in ignorance. In the case at bar notice to the Hospital is not one of the material propositions upon which liability (guilt) rests and the rule of Henry v. Allen becomes inapposite. Furthermore, it is not certain that the rule in any event would have application where the third party (here the Government) is operating under compulsion of law. The cases cited all concern essentially consensual relations.[6] Stated another way, Henry v. Allen does not hold that the defrauding agent is no longer an agent for any purpose. It merely holds that for certain purposes he cannot bind his principal. But here we are unconcerned with Chapman's power to bind the Hospital or the patients. What is of interest is whether the Post Office, from its point of view, fulfilled its function when it gave over the mail to the person who was otherwise fully authorized to receive it. Here part of the holding in Henry v. Allen becomes apposite:

"Whether this case should be regarded as an exception to the general rule, because the usual presumption as to disclosure does not exist, or simply as not covered by the rule, because the acts in question were not within the scope of the agent's authority, we think that notice * * * should not be imputed to the plaintiff. No question of apparent authority arises, because the defendants did not know Monson as agent, but supposed he was acting for himself alone. When they invoke his agency for their protection, therefore, they are limited to his actual authority." (151 N.Y. at pages 11–12, 45 N.E. at page 358).

Whatever effect Chapman's felonious intent might have on his real authority, the Government, in discharging its function could rely on Chapman's apparent authority, and in so doing "delivered" the mail to the Hospital authorities as contemplated by the applicable regulation.

The Government obliquely cites a rule of criminal law, well supported by authority, that an agent who converts to his own use goods that came into his possession at a time when he had already formed a plan of conversion is guilty of larceny and not embezzlement. See Tredwell v. United States, 4 Cir., 1920, 266 F. 350 (alternative holding); United States v. Sander, supra; 2 Wharton, Criminal Law & Procedure § 516 (1957).

6. The rule, of course, may be applied in criminal cases and guilt may be the consequence of its application. People v. Kirkup, 1958, 4 N.Y.2d 209, 173 N.Y.S. 2d 574, 149 N.E.2d 866, is such a case. But even there the rule was applied in the manner indicated. The defendant, tried under a conspiracy count, would not be guilty unless the object of the conspiracy was, in this case, a larceny. The conspiracy centered around sales negotiated by salesmen of drug firms to defendant's drug store at lower prices reserved for non-profit institutions. Such sales were larcenies under New York law because the drug firms would not have parted with the merchandise had they known the true facts. The court held that the salesmen's knowledge was not imputed to the firms, relying on Henry v. Allen.

It is said that the fraudulent intent is equivalent to a trespass, and a trespass is what distinguishes larceny from embezzlement. Ibid. This rule is seemingly independent of the rule of Henry v. Allen.[7] Applying this rule to the case at bar, Chapman committed larceny and violated § 1702 when he took the mail from the Post Office with a felonious intent; the actual opening of the mail bags and extracting the letters, in this view, only being evidentiary of the state of mind that existed when the defendant was given the mail. See United States v. Sander, supra.

Under this rule, the larceny, concluded at the time and place Chapman received the mail, forecloses any consideration of delivery to the hospital, because by definition the defendant and not the Hospital had exclusive control of the mail.

Notwithstanding the authority I have cited, I do not think that the question is settled. The Post Office Department itself recently labeled "abstract" the argument I have just set out and concluded that the law was otherwise.[8] I agree. That this rule muddies the waters between larceny and embezzlement is not by itself a conclusive reason for rejecting it. However, in this area of potentially over-lapping federal and state criminal jurisdiction it is important to clearly define and delimit the federal interest. To allow subjective intent to negative the objective fact of delivery would introduce such confusion and uncertainty into the administration of both federal and state criminal law as to militate against adoption of such a rule here.

My objection to this rule of "larceny ab initio" and my insistence on a rule that determines delivery by objective criteria can be illustrated by a hypothetical. What is the consequence of delivery to an honest hospital agent at the Post Office and subsequent thefts by other hospital employees or patients as the mail is distributed throughout the hospital? If it is the state of mind of *only* the original receiver that determines whether delivery has occurred, (the Sander rule seemingly is so limited) the subsequent thefts would not be federal crimes.[9] In principle, however, it is difficult to distinguish the case supposed from the case before the court. In either case the ultimate addressee does not get the letter that was sent to him because of the action of a person outside the government who acted after the government function was seemingly completed. Logic then would force a choice between federal interest continuing until the addressee-

7. Assuming that an agent never intends to convert mail until *after* it comes into his possession, the agent would be guilty under the Government's interpretation of the rule in Henry v. Allen, but not guilty under the Sander rule.

8. See the Opinion of the Solicitor, dated June 13, 1950, referred to in 9 Opinions of the Solicitor for the P.O.Dep't. 666 (1951). The Solicitor's opinion was requested regarding thefts of mail over a long period of time by an apartment house elevator operator who was given mail by the carrier addressed to the tenants, the house not being equipped with mail boxes. The U. S. Attorney's Office had already caused an indictment, returned pursuant to § 1708, to be dismissed on the theory "that when the carrier delivered the mail to [X], [X] was the agent of the tenants, that delivery was complete and Federal jurisdiction ceased as of that time * * *." The opinion continues with the examination of both § 1702 and § 1708 as interpreted by the Driscoll, Parsons, Sander, Safford and Bullington cases, already cited in this opinion, supra, and concludes: "Inasmuch as [X] was authorized to receive mail on behalf of the tenants, the taking from the carrier was authorized and that act, therefore, cannot serve as a basis for prosecution. While, as an abstract matter, the taking might be considered unlawful and therefore punishable under Federal law if [X] took the mail from the carrier with intention to violate his authority, that contention has been disposed of by the cases cited above."

9. The unexpressed assumption that when mail is delivered it is *delivered* once and for all and does not again come under federal control by any act short of re-mailing seems too obvious to warrant extended discussion. Furthermore, the Government does not argue as to § 1702 that federal interest continues beyond delivery.

patient has manual possession of the letter and limiting federal interest to the earlier time when the employee is given the mail at the Post Office regardless of the employee's intent. The first alternative has received support in an unreported case where the defendant was convicted for taking a letter from a patient's bed, placed there in the absence of the patient. See Case No. 19123 D.C.W.D. Mo.1955, 137 F.Supp. 298, cited at page 305 of the district court opinion in United States v. Maxwell, supra. However, I think that this decision goes too far and flies in the face of 39 C.F.R. § 44.6 (a) which I think requires the application of the second alternative.

This conclusion seems sound for another reason. To deny the motion to dismiss I would have to hold by implication that at the time the defendant violated the law the mail was undelivered and still under federal control. It might then be argued in another case that such an employee during his trip back to the Hospital, was performing the governmental function of delivering the mail, so that if as a result of his negligence on the way some one were injured, the person injured might have a suit against the United States.[10]

■■ It will be seen that what has already been said in the discussion of § 1702, regarding the scope of the federal function and interest, applies with equal logic to § 1706 and § 1708. Count Two charges the defendant with a violation of § 1706 in that he loosened a strap of a mail bag with the intent of stealing the mail in the bag. I interpret § 1706, under these facts, to apply only to the period between mailing and delivery. Only then does the mail contained in the bag require federal protection. "So a statute, broad in its terms, will be restricted by construction to the objects which the leg-

islature had in view." United States v. Safford, supra, 66 F. at page 943.

■ The only question as to § 1708 is whether the mail bag was an "authorized depository for mail matter" as alleged in the pertinent counts of the indictment. The Government has devoted much of its brief to this question but has failed to cite any statute or current regulation of the Department which authorizes a mail bag to be such a depository. The Government does cite a regulation that authorized as an authorized depository "every * * * receptacle intended or used for the receipt or delivery of mail matter on every * * * mail route." 13 Fed.Reg. 8950 (1948). But that regulation does not appear in the 1955 revision.

I am strengthened in this conclusion by reasoning from the converse situation. Suppose that mail written by the patients, upon collection by the Hospital authorities, were placed in the same bags in which mail had arrived at the Hospital and carried by an authorized employee to the local Post Office. Suppose further that this employee, as was his custom, opened the bag and rifled the mail. It seems evident that no federal crime would be committed because the mail had never been placed under federal control in a manner authorized by statute or regulation.[11] The fact that the letters had never been "mailed" would eclipse any consideration of whether the bag was a "mail bag" as used in § 1706 or a "mail receptacle" as used in § 1706. Cf. United States v. Askey, D.C.S.D.Texas 1952, 108 F.Supp. 408.

The case of Rosen v. United States, 1918, 245 U.S. 467, 38 S.Ct. 148, 149, 62 L.Ed. 406, has been cited by the Government as requiring the denial of the Motion. In that case the defendants were convicted under § 1708 for stealing

---

10. The United States is responsible for the torts of its employees "in the same manner and to the same extent as a private individual." 28 U.S.C. § 2674. "Employee of the government" is defined in 28 U.S.C. § 2671 to include "persons acting on behalf of a federal agency in

an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation."

11. 18 U.S.C. § 1696 contemplates such delivery to the local post office by non-postal employees.

456

letters "from boxes placed by tenants for the receipt of mail in the halls of buildings in which they had their places of business." The Supreme Court affirmed, relying on the regulation already referred to that made such boxes authorized depositories. The Court then went on:

"The suggestion that when the mail was deposited in a privately owned box it passed out of the custody of the government and beyond the protection of the law does not deserve extended notice. The letters which were stolen did not reach the manual possession of the persons to whom they were addressed, but were taken from an authorized depository over which the Act of Congress, by its express terms, extended its protection until its function had been served." (245 U.S. at page 473, 38 S.Ct. at page 151).

But all this language means is that the mail was never "delivered" as I have used the term. Since there is in effect 39 C.F.R. § 44.6(a) (1955) that controls delivery to patients at hospitals, that regulation takes our case out of the narrow holding of Rosen.

It cannot be gainsaid that the problems presented in this case are difficult of solution and the decisions of some lower courts could be construed as pointing to a conclusion inconsistent with the one reached here. See United States v. Maxwell, supra, and cases cited therein 137 F. Supp. at page 305 of the district court opinion; United States v. McCready, supra. The district court in the Maxwell case appears to have been persuaded by the argument that the increased number of checks, especially Treasury checks, sent through the mails requires greater federal protection. Although such an argument has some content, it seems to me that in the light of the early judicial decisions (see, e. g., United States v. Bullington, supra; United States v. Safford, supra; United States v. Parsons, supra), it is an argument better made to Congress than to the courts.

When this motion to dismiss the remaining counts of the indictments was made at the completion of the Government's case I reserved decision, and the following day indicated from the bench that I had decided to grant the motion and that an opinion giving the reasons for my action would be forthcoming so that the Government would have some guidance in plotting its future course in this case. With this opinion I formally grant the motion and hereby

Order that the remaining counts in both indictments against the defendant Chapman be dismissed. This is an order.