# Agency Rules as Constraints on the Exercise of an Agency's Statutory Discretion

When an agency exercises discretion vested in it by statute by issuing a rule, the rule assumes the force and effect of law, and must be followed by the agency until it is amended or revoked. This principle applies notwithstanding an amendment to the authorizing statute affording greater discretion to the agency than is reflected in the existing rule.

When a statute grants discretion to an agency, the agency is usually free to exercise that discretion on a case-by-case basis, rather than through the adoption of general rules, unless either the statute itself or the requirements of due process make the adoption of general rules mandatory.

March 4, 1983

MEMORANDUM OPINION FOR THE GENERAL COUNSEL,
DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

This responds to your request for advice regarding the effect of an agency's rules as a constraint upon, and a condition for, the exercise of authority conferred by statute. Your specific inquiry is whether a particular rule providing ceilings on insured federal mortgages must be amended before new statutory authority may be exercised. Your general inquiry is whether an agency is under any broad obligation to issue rules before taking action pursuant to a grant of statutory authority.

We discuss the specific issue in Part I below, and the general question in Part II. With regard to your specific inquiry, we believe that the Secretary of Housing and Urban Development (HUD) should amend the existing mortgage insurance rule establishing a ceiling on insured mortgages before exceeding the ceiling stated in the rule. The former Secretary of HUD exercised discretion by promulgating the existing rule creating a ceiling on insured mortgages (which ceiling corresponded to the old statutory ceiling). If the present Secretary wishes to exercise his discretion to approve larger mortgages, he can do so up to the limits of the new statutory authority. Before doing so, however, he should first amend the existing rule. There are, of course, statutory grounds for expediting such a rulemaking process so that the process of bringing the rule into line with the new statutory ceiling on insured mortgages should not be inordinately time consuming or disruptive of agency policymaking. See 5 U.S.C. § 553.

In response to your general question, we explain in Part II the basic factors to be taken into account by an agency in determining whether to issue rules pursuant to statutory authority. We must stress, however, that it is difficult to

39

give reliable guidance about such a broad subject, which must be approached on a case-by-case basis in light of the governing law.

## I. The Status of Existing Rules as a Constraint on the Secretary's Discretion

Your specific inquiry involves the Secretary's authority relating to federal mortgage insurance. In pertinent part, the relevant statute provided (until recently amended):

> To be eligible for insurance under this section a mortgage on any property or project shall involve a principal obligation in an amount —
>
> * * *
>
> (3) Not to exceed, for such part of the property or project as may be attributable to dwelling use . . . $19,500 per family unit without a bedroom, $21,600 per family unit with one bedroom, $25,800 per family unit with two bedrooms, $31,800 per family unit with three bedrooms, and $36,000 per family unit with four or more bedrooms, . . . *except that the Secretary may, by regulation, increase any of the foregoing dollar amount limitations contained in this paragraph by not to exceed 75 per centum in any geographical area where he finds that cost levels so require, except that, where the Secretary determines it necessary on a project by project basis, the foregoing dollar amount limitations contained in this paragraph may be exceeded by not to exceed 90 per centum in such area. . . .*

12 U.S.C. § 1713(c)(3) (Supp. V 1981) (emphasis added). *See* Pub. L. No. 96153, § 314, 93 Stat. 1101, 1117 (1979) (the "Housing and Community Development Amendments of 1979"). To recapitulate, under the foregoing authority the Secretary "may, by regulation," exceed the stated dollar amount limitations by up to 75 percent in a high-cost area. In addition, on a project-by-project basis, he may exceed the limitations by up to 90 percent.

Pursuant to this authority, on January 21, 1980, HUD published a final rule in the Federal Register to amend then existing rules.[1] The effect of the final rule, as explained in the agency's summary, was:

> to increase from 50 percent to 75 percent the maximum percentage by which mortgage amount limitations may be increased in high cost areas. In addition, this rule adds a provision to each of those sections permitting the [Federal Housing] Commissioner, on a case-by-case basis, to increase the mortgage amount limitations *by up to 90 percent.*

---

[1] HUD's rulemaking authority in this context derives from 12 U.S.C. § 1715b, which provides that the "Secretary is authorized and directed to make such rules and regulations as may be necessary to carry out the provisions of this subchapter." That subchapter deals with federal mortgage insurance.

45 Fed. Reg. 3903 (1980) (emphasis added). In the "supplementary information" furnished regarding the rule, HUD noted that the statute provided that the Secretary "may" increase mortgage amounts up to certain new statutory limits, and that the final rule "implements the statutory change by making parallel revisions in the regulations governing the affected mortgage insurance programs." *Id.* In explaining the reasons for proceeding directly with final rulemaking, rather than issuing a notice of proposed rulemaking and inviting public comments, HUD stated:

> The Secretary has determined that, in light of the current economic situation, *it is urgent that the benefits afforded by these amendments be made available as soon as possible.* Publishing a notice of proposed rulemaking and giving the public an opportunity to comment on these amendments would cause a substantial delay in making the benefits available. Therefore, the Secretary finds that notice and public procedure on these amendments would be contrary to the public interest. Since *these amendments relieve restrictions contained in the present regulations,* it is not necessary to delay the effective date of these amendments for the 30 day period provided in 5 U.S.C. 553(d).

*Id.* (emphasis added). Accordingly, HUD's explanation accompanying the final rule makes plain that, in the agency's view, the 1980 amendment was necessary to "relieve" existing regulatory restrictions, and such relief was required immediately.[2]

More recently, in the continuing resolution making appropriations for FY 1983, adopted in December 1982, the 97th Congress amended the underlying statute. As amended, the statute provides that, in certain circumstances on a project-by-project basis, the stated dollar limits may be exceeded by 140 percent, rather than by 90 percent as previously allowed.[3] You have asked whether it is now necessary for HUD once again to amend its rule, which presently does not provide for mortgages that exceed the stated project by project limit by more than 90 percent, before the Secretary may authorize mortgages on a project by project basis up to 140 percent.

---

[2] As published in the Code of Federal Regulations, the rule provides.

> In any geographical area where the Commissioner finds that cost levels so require, the Commissioner may increase, *by not to exceed 75 percent,* the dollar amount limitations set forth in paragraphs (a)(2) and (b) of this section. In such high cost areas, where the Commissioner determines it necessary on a project-by-project basis, the Commissioner may increase these dollar amount limitations *by not to exceed 90 percent.*

24 C.F.R. § 207.4(c)(1) (emphasis added).

[3] The pertinent language is contained in Senate Amendment 32 to H.R.J. Res No. 631, 128 Cong. Rec. 31324 (1982), which inserted after "90 per centum" in 12 U S.C. § 1713(c)(3) the following parenthetical phrase· "(by not to exceed 140 per centum where the Secretary determines that a mortgage other than one purchased or to be purchased under section 305 of this title by the Government National Mortgage Association in implementing its special assistance functions is involved)."

The statute in question does not impose a specific, self-executing and mandatory limit on insured mortgages. Instead, it provides authority and discretion for the Secretary to allow mortgages up to a stated limit; thus, under the statute as amended, the Secretary has authority and discretion to set a figure for mortgages below the upper limit.[4] In short, the Secretary has the discretion to determine what the limit actually will be. In this case, a determination has been made and embodied in the existing rule, providing that insured mortgages under the provision shall not in any event exceed 90 percent of the stated amounts. This rule acts as a separate constraint on the Secretary's discretion. Unless the Secretary changes the rule to make it conform with the new statute (which he has authority to do), any mortgage above the regulatory ceiling would violate the agency's own rule, although not the statute itself.

The applicable legal precept here is that when an agency exercises statutory discretion by issuing a rule, the rule assumes the force and effect of law, and must be followed by the agency until it is changed by some subsequent exercise of discretion. This precept has been expressed in unmistakable terms by the courts.

One of the leading cases is *United States* v. *Nixon*, 418 U.S. 683, 694–96 (1974), which involved a regulation issued by the Attorney General that conferred on a Special Prosecutor the power to contest the invocation of executive privilege. The Court stated:

> [I]t is theoretically possible for the Attorney General to amend or revoke the regulation defining the Special Prosecutor's authority. But he has not done so. *So long as this regulation remains in force the Executive Branch is bound by it*, and indeed the United States as the sovereign composed of the three branches is bound to respect and to enforce it.

*Id.* at 696 (emphasis added). The Court in *Nixon* cited as authority for its analysis a number of other decisions in which agency regulations that are "legislative" in character, in the sense that they implement grants of statutory discretion, were considered binding on agencies.[5] If an agency wishes not to comply with one of its own rules, the courts have indicated, the agency would have to amend or revoke the rule first. Otherwise, there would be a violation of

---

[4] In this case, it is clear from the statute's language and legislative history that Congress granted HUD a maximum range of discretion, and left the agency to decide whether to exercise all of the discretion granted:

The House bill contained a provision to amend the National Housing Act to allow the maximum mortgage limits for high cost areas to exceed statutory limits up to 75 percent, while the Senate amendment allowed the mortgage limits for those areas to exceed the statutory limits up to 90 percent. The conference report contains the Senate provisions, with an amendment which provides that mortgage limits may exceed the statutory limits *up to 75 percent* in any geographical area. In addition, where determined by the Secretary on a project-by-project basis, the maximum mortgage limits for high cost areas may exceed the statutory limits *up to 90 percent.*

H.R. Rep. No. 706, 96th Cong., 1st Sess. 65 (1979) (emphasis added).

[5] *See United States ex rel. Accardi* v. *Shaughnessy*, 347 U.S. 260 (1954); *Service* v. *Dulles*, 354 U.S. 363, 388 (1957); *Vitarelli* v. *Seaton*, 359 U.S. 535 (1959).

the principle that the Government, no less than private citizens, is obliged to comply with the law.[6]

These cases compel the conclusion that the existing HUD rule setting the maximum limit of 90 percent above the stated amounts for insured mortgages should be amended before the 90 percent maximum is exceeded. Even though the agency's statute recently has been amended to permit mortgages in some cases up to 140 percent above the stated amounts, the existing rule constitutes a separate constraint. We would add that when the existing rule was promulgated in 1980, the process was expedited through exceptions in the Administrative Procedure Act to the usual notice and comment requirements. *See* 5 U.S.C. § 553. Those exceptions might be invoked again to help assure that there will be no undue delay in amending the existing rule.[7]

We conclude that HUD must amend the existing rule in pertinent part before exercising its newly granted discretion to increase the limits of certain insured mortgages by up to 140 percent.

## II. The Status of Agency Rules as a Condition for the Exercise of Agency Discretion

Your general inquiry is distinguished from your specific question in that it deals with the situation facing an agency before any rule has been issued pursuant to statute. As you have expressed the issue, must the Secretary "feel himself constrained from acting upon statutorily granted authority until he also has promulgated a regulation that . . . permits him to do it" or, put another way, must the Secretary "consider the statutory authority somehow unperfected until there is a regulation"?

---

[6] *See Vitarelli* v. *Seaton*, 359 U.S. 535, 546–47 (1959) (Frankfurter, J., concurring in part and dissenting in part). For the principle that rules which implement grants of statutory discretion have the force and effect of law, *see, e.g., United States* v. *Nixon*, 418 U.S 683, 695 (1974); *United States* v. *Mersky*, 361 U.S. 431, 438 (1960); *Rodway* v. *United States Dep't of Agriculture*, 514 F.2d 809, 814 (D.C. Cir. 1975). For the principle that rules bind agencies until modified or amended, in addition to the authorities cited *supra* note 5, *see Hellin* v. *United States*, 374 U.S. 109 (1963); *Bonita* v. *Wirtz*, 369 F.2d 208 (1966); *United States* v. *Short*, 240 F.2d 292, 298 (9th Cir. 1956); *American Broadcasting Co.* v. *FCC*, 179 F.2d 437 (1947), *Nader* v. *Bork*, 366 F. Supp. 104 (D.D.C. 1973); *United States* v. *Chapman*, 179 F. Supp. 447 (E.D.N.Y. 1959).

[7] We must caution, however, that courts are often careful to indicate that mere administrative convenience, without more, will not suffice to bring a particular situation within the terms of the statutory exceptions to notice and comment procedures. *See, e.g., Council of the Southern Mountains, Inc.* v. *Donovan*, 653 F.2d 573, 580–81 (D.C. Cir. 1981).

HUD remains bound by its own rule even though few if any private parties might actually be harmed by the agency's decision not to comply with the rule. There is a distinction between questions of standing (who is harmed by failure to comply with a rule?) and legal responsibility (is there a rule binding an agency?). Legal responsibility may exist regardless of whether any private party would necessarily be in a position to secure a judicial judgment regarding the legality of the agency's action.

We also note that there is a distinction between rules that implement grants of statutory discretion and thus bind an agency until altered or repealed, such as the rule at issue here, and statements of policy that are only precatory and do not create definite duties or responsibilities. *Cf. Thorpe* v *Housing Authority of City of Durham*, 393 U.S. 268, 275 (1969) (in holding that certain circulars in HUD's low rent manuals imposed a mandatory obligation, the Court indicated that some "handbooks" or "booklets" containing general instructions or items of consideration may not impose such a mandatory obligation). The present case does not raise any serious doubt as to whether HUD is bound by the terms of the rule in question.

43

The answer to your question will generally turn on the nature of the applicable statutory requirements. Absent statutory language to the contrary, agencies are free to decide whether to implement a grant of discretion by means of rules, which provide prospective standards of behavior, or by means of case-by-case decisionmaking (or adjudication).[8] In some situations, however, an agency's statute may specifically require that, before discretion is exercised, an agency must promulgate rules to guide the use of discretion.

An example of a situation in which rulemaking is a prerequisite for the exercise of discretion is provided by the leading case of *Addison* v. *Holly Hill Fruit Products, Inc.*, 322 U.S. 607 (1944), which involved a provision of the Fair Labor Standards Act exempting from its requirements employees "within the area of production (*as defined by the Administrator*), engaged in canning of agricultural . . . commodities for market." *Id.* at 608 (emphasis added). Under the terms of this statute, the phrase "area of production" was not defined, but was left to be defined by the relevant agency head. Without such a definition — which would be a prospective standard constituting a rule — the statutory provision could not be fully operative on its own terms.[9]

Other statutes more generally direct an agency to promulgate regulations providing certain standards pursuant to particular authorities. For instance, the National Traffic and Motor Vehicle Safety Act provides in part that the "Secretary of Transportation shall establish appropriate motor vehicle safety standards." *See* 15 U.S.C. § 1392(a). Of course, one cannot assume, merely on the basis of such broad mandatory language, that any particular type of standards must be promulgated. Even when a statute declares that an agency "shall" issue regulations, a host of questions remain concerning the degree of specificity, the breadth and the particular contents of any given regulatory scheme; these questions must be resolved in the first instance by the responsible agency.

To be sure, there are many situations in which controlling statutes do not require an agency to issue regulations, and in which no claim can be made that due process dictates that an agency promulgate some general rules to structure and regularize its discretion under law.[10] In these cases, agencies generally are

---

[8] *See, e.g., NAACP* v. *Federal Power Comm'n*, 425 U.S. 662, 668 (1976) ("As a general proposition it is clear that the Commission has the discretion to decide whether to approach these problems through the process of rulemaking, individual adjudication, or a combination of the two procedures."). Of course, the suitability of rulemaking or adjudicatory procedures in given situations will depend on a detailed examination of what exactly the agency is seeking to do, and under what authority. *See NLRB* v. *Wyman Gordon Co.*, 394 U.S. 759 (1969); *NLRB* v. *Bell Aerospace Co.*, 416 U.S. 267 (1974).

[9] A rule is defined in the Administrative Procedure Act in broad terms as "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy." 5 U.S.C. § 551(4). In *Addison* itself, a regulation was promulgated and published in the Code of Federal Regulations by the Administrator of the Fair Labor Standards Act to define an "area of production" as including, *inter alia*, an individual engaged in canning "if the agricultural or horticultural commodities are obtained by the establishment where he is employed from farms in the immediate locality and the number of employees in such establishment does not exceed seven." 322 U S. at 609

[10] Courts have sometimes, though not often, held that due process requires the enunciation of general rules or standards governing the exercise of an agency's discretion in order to avert the possibility of a wholly arbitrary decisionmaking process. *See, e.g., Holmes* v. *New York City Housing Authority*, 398 F.2d 262 (2d Cir. 1968); *Hornsby* v. *Allen*, 326 F.2d 605 (5th Cir. 1964).

free to decide whether to exercise their statutory authority by means of regulations. The decision whether to issue regulations in such instances turns on complex issues of policy, which must be addressed by those most familiar with a given statutory and administrative scheme.

Among the central considerations supporting an agency's decision to promulgate rules are that the rules may provide prospective standards to guide the conduct of the agency and others, and supply answers to questions engendered by the agency's authorizing legislation.[11] Moreover, rulemaking provides special benefits to the affected public, for it is a public process that provides notice to interested groups about an agency's course of action. *See, e.g., National Petroleum Refiners Ass'n v. FTC*, 482 F.2d 672, 681–83 (D.C. Cir. 1973). In the end, however, the actual decision about how to implement a statute granting discretion ultimately remains with the agency itself, subject to judicial review in an appropriate case.

THEODORE B. OLSON
*Assistant Attorney General*
*Office of Legal Counsel*

---

[11] *See, e.g., Morton v Ruiz*, 415 U S. 199, 231 (1974) ("The power of an administrative agency to administer a congressionally created and funded program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress.").